The **NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE et al., Plaintiffs,**

v.

**Griffin B. BELL et al., Defendants.**

**Civ A. No. 75–1317.**

United States District Court, District of Columbia.

April 3, 1978.

See also D.C., 76 F.R.D. 134.

J. Francis Pohlhaus, Washington, D.C., for plaintiffs.

Bruce J. Berger, William L. Gardner, Stephen Horn, Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM

BARRINGTON D. PARKER, District Judge.

The plaintiffs in this proceeding have filed a motion for attorneys' fees and costs under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. For the reasons set forth below, the Court finds that plaintiffs are entitled to a reasonable award.

I. *Background*

In 1971, Carnell Russ, a black, was fatally shot by a white Arkansas law officer while detained for an alleged speeding violation. The officer was subsequently acquitted of manslaughter charges by a state court jury deliberating less than fifteen minutes. After reviewing the transcript of the manslaughter trial proceedings and Federal Bureau of Investigation (FBI) reports, the Department of Justice decided not to prosecute anyone under the federal criminal civil rights statute, 18 U.S.C. § 242.

The National Association for the Advancement of Colored People (NAACP) and the Russ family brought this action under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1985, challenging the adequacy of the federal investigation and the decision not to prosecute. In essence, they claimed that the Justice Department illegally deferred to state proceedings, thereby pursuing a policy, established in 1959 by Attorney General William Rogers, not to follow a state prosecution with a federal trial for the same act, absent compelling reasons. As applied to civil rights cases, specifically to the Russ shooting, plaintiffs labeled this policy unreasonable and racially discriminatory.

In February of 1977, Attorney General Griffin Bell issued a memorandum modifying the 1959 non-dual prosecution policy in the civil rights field. He announced that "each and every allegation of a violation of the civil rights laws shall be evaluated on its own merits," irrespective of related state enforcement action.

Agreeing that this memorandum effectively mooted this action, the parties moved jointly to dismiss. Finding that the Bell memo was indeed "in accord with the policy objectives which underlie this suit," the Court dismissed the case without prejudice.

Plaintiffs seek an award of $28,700.00 in attorneys' fees and $855.50 in costs under 42 U.S.C. § 1988, which provides in relevant part that

> [i]n any action or proceeding to enforce a provision of sections 1981, . . . 1985, . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Defendants do not contest the validity of applying this act retroactively or to obtain an award from the government. *See* S. Rep. No. 94–1011, 94th Cong., 2d Sess. 4–5 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908. They do contest plaintiffs' status as prevailing parties under the statutory scheme and the reasonableness of the amounts requested. On balance, the Court finds that plaintiffs have prevailed, since this action was a catalytic factor in the issuance of the memo. Further, the Court finds that their counsel are entitled to an award of $26,912.25.

## II. *Plaintiffs Are Prevailing Parties*

■ To determine whether a party has prevailed in order to collect attorneys' fees under § 1988, the Court must focus on whether that party has accomplished the objectives of his litigation. *Parker v. Matthews,* 411 F.Supp. 1059, 1064 (D.D.C.1976), aff'd sub. nom., *Parker v. Califano,* 561 F.2d 320 (D.C.Cir. 1977). A party need not win a full trial on the merits to be said to prevail, but the lawsuit must have resulted in or been the catalyst of a victory for the party or the class he represents. *Parker v. Califano, supra ; Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970); *Fogg v. New England Tel. & Tel. Co.,* 346 F.Supp. 645 (D.N.H.1972).

■ The defendants here claim that plaintiffs accomplished none of the objectives of this litigation. The Order of Dismissal neither required the government to undertake a full investigation of the Russ shooting nor provided monetary relief for the Russ family. Because they maintain that non-dual prosecution considerations did not govern in the Russ case, defendants disavow any relationship between the complaint and issuance of the Bell memorandum. Indeed, they deny the existence of any such policy and interpret the memorandum to be a clarification of Department rules, rather than a policy reversal. In specific, Attorney General Bell was merely explaining why the Department brought a criminal prosecution in the Morales case after a state conviction. *See* discussion *infra* at page 1167.

Viewing defendants' arguments to be at best disingenuous, the Court finds that plaintiffs' persistent prosecution of this action was a strong catalytic factor in the issuance of the Bell memorandum. True,

plaintiffs did not obtain monetary relief or federal investigation with an eye toward prosecution, the latter presumably due to statute of limitations problems. They did, however, achieve the policy objectives outlined in the second amended complaint.

The Court and the parties alike recognized that plaintiffs' major reason for pursuing this lawsuit was to publicize and correct the government policy of deferring to prior state civil rights prosecutions, with its discriminatory impact on Carnell Russ and other minority group members. The joint motion to dismiss and the resulting Supplemental Memorandum Order of August 16, 1977, identify this as the "primary objective" of the suit and admit that the Bell memorandum is "in accord" with that policy objective.

In his memorandum, Attorney General Bell announced that the 1959 non-dual prosecution policy shall not govern in civil rights cases. While not admitting that the 1959 policy had been used in the Russ case or others, the memo suggests that agency practice had not been one hundred percent in accord with the standards outlined in the memo. Even assuming that the memo was issued to clarify government policy or to prod federal attorneys and investigators to pursue dual prosecutions more vigorously, its issuance was bound to benefit victims of civil rights crimes.

Discovery in this case revealed that the FBI and Justice Department received many complaints requesting independent federal investigations of the shooting deaths of minority persons by white law enforcement officers, following questionable state proceedings. The most publicized of these involved the 1975 killing of Ricardo Morales, a Mexican-American, by Texas Police Chief Frank Hayes, for which Chief Hayes was sentenced by a state court to two to ten years for Aggravated Assault. *United States v. Hayes,* SA 77–Cr–38 (W.D.Tex. July 8, 1976). The U. S. Attorney reversed his decision not to prosecute, which had been based in part on the non-dual prosecution policy, only after massive pressure was brought to bear by civil rights groups and national politicians. *See* Affidavit of Ruben Sandoval, December 4, 1976.

In issuing the dual prosecution memorandum as one of his first official acts, Attorney General Bell was presumably addressing the major policy problem reflected by such numerous complaints. While the Morales case may have been the immediate motivation for the memo, the plaintiffs in this litigation also played a role in causing his action. In a situation such as this, where policy matters are concerned, plaintiffs should not be denied prevailing party status and attorneys' fees only because other citizens have paralleled their attempts to correct the offending policies.

Indeed, the policy ramifications of this case distinguish it from the Title VII catalyst cases discussed by both parties. *See Foster v. Boorstin,* 182 U.S.App.D.C. 342, 561 F.2d 340 (1977); *Fogg v. New England Tel. & Tel. Co., supra.* Where filing of a discrimination suit by an employee leads an employer to change promotion procedures, without the necessity of concluding court proceedings, it is not difficult to credit the employee with the change. Here, the plaintiffs challenged alleged policies of discriminatory investigation and prosecution by the federal government. Given that such discrimination is more subtle than that involved in the average Title VII case, plaintiffs cannot be faulted because the relief sought and obtained is also difficult to pinpoint. The standards for dual prosecution set forth in the memorandum are intended to and will benefit victims of civil rights crimes. Pursuant to the terms of this Court's Order of August 16, 1977, the defendants are to comport with these standards, thereby increasing the likelihood that a Carnell Russ incident will not be repeated. Plaintiffs deserve credit for achievement of this policy objective.

The Court, exercising its discretion under 42 U.S.C. § 1988, finds that the disposition of this case leaves plaintiffs entitled to an award of reasonable attorneys' fees and costs.

### III. *Reasonable Attorneys' Fees and Costs*

To gauge the reasonableness of attorneys' fees requested by plaintiffs, the

Court has referred to the relevant criteria of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), adopted by this Circuit in *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 503 F.2d 177 (1974), which include: 1) the experience and reputation of the attorneys; 2) the time and labor required; 3) the novelty and difficulty of the questions; 4) the nature and length of the professional relationship with the client; 5) the amount involved and results obtained; and 6) the customary fee.

Plaintiffs have filed affidavits in support of their request for attorneys' fees of $28,-700.00. Their principal attorney, James I. Meyerson, Esquire, has been an Assistant General Counsel for the NAACP since 1970 and has accumulated extensive litigation experience in the civil rights field. He seeks compensation at the rate of $100.00 per hour for 236 hours of legal work and 24 hours of travel. J. Francis Polhaus, Esquire, NAACP attorney for 24 years, also seeks compensation at $100.00 per hour for 27 hours of legal work, including 17 hours on the motion for attorneys' fees.

Defendants view the requested amount to be unreasonably high, though they do not specifically contest the rate charged or the hours invested. They do object to plaintiffs' failure to document their attorneys' reputation or fees awarded in similar cases.

■ The Court finds that the award requested, minus compensation for travel hours, is reasonable and fair. The rate of $100.00 per hour is commensurate with counsels' experience in the civil rights field and their reputation, of which the Court takes notice. Given the breadth of plaintiffs' complaint and the novelty of the policy attack, which explains why comparable awards cannot be quoted, the hours spent on legal work are justifiable. Hourly compensation for travel hours, above and beyond expenses, is inappropriate. In sum, therefore, plaintiffs are entitled to attorneys' fees of $26,300.00.

In addition, plaintiffs seek to tax $855.30 in costs: $210.00 in plane fare and $96.00 in expenses incurred by counsel on three trips to Washington, D. C., to take depositions, to argue a discovery motion before the United States Magistrate, and to argue motions before the Court; $222.25 for deposition transcripts; $77.05 for expenses incident to the depositions; and $250.00 for copying charges.

On the basis of 28 U.S.C. §§ 1920 and 2412, the Court will allow the transcript ($222.25) and copying costs ($250.00) to be taxed in full. Plaintiffs are also entitled to be reimbursed for transportation costs ($140.00) incurred by counsel to appear before the Court on the two noted occasions. Plaintiffs will not be allowed travel-related expenses or the $77.05 of unspecified costs incident to taking of depositions. Costs will therefore be taxed in the amount of $612.25.

On the basis of the foregoing discussion and computation, the Court has determined that plaintiffs are entitled to a total award of $26,912.25, representing $26,300.00 in attorneys' fees and $612.25 in costs.

An appropriate Order will be entered.