Leroy **LACKEY**, Individually and on behalf of all others similarly situated, **Plaintiff**,

v.

William M. **BOWLING** et al., **Defendants.**

No. 78 C 1980.

United States District Court, N. D. Illinois, E. D.

April 6, 1979.

Alan Gilbert, Robert Masur, Lucy A. Williams, Legal Assistance Foundation of Chicago, Garfield-Austin Legal Services, Chicago, Ill., for plaintiff.

Moshe Jacobius, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff brought this suit on behalf of himself and all others similarly situated against the Illinois Department of Labor and various of its officers, alleging that defendants had withheld and were withholding unemployment insurance benefits to which plaintiffs were legally entitled. Plaintiff filed suit on May 19, 1978. On June 26, 1978, two days before we were to hear arguments on plaintiff's motion for a preliminary injunction, defendants received a letter from the U.S. Department of Labor's Associate Regional Administrator for Unemployment Insurance (Regional Administrator) informing them that they had "interpreted Federal law incorrectly." (Exhibit E). The following day, defendants reversed their policy and agreed to provide retroactive unemployment insurance benefits to the entire plaintiff class. The case was then dismissed as moot. Plaintiffs' counsel, members of the Legal Assistance Foundation, move for attorneys' fees under 42 U.S.C. Section 1988, which provides:

> In any action or proceeding to enforce a provision of sections 1981, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, . . . or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

1. *Whether Plaintiff Prevailed*

Defendants argue that plaintiff cannot be considered the prevailing party because his complaint would have been dis-

missed had not the case been mooted. We question whether defendants should be able to reopen the merits of the case on a petition for attorneys' fees. Defendants have cited no law in support of their position, and we have been unable to locate any support for it. In fact, a party is generally considered to have prevailed within the meaning of Section 1988 if that party has "accomplished the objectives of his litigation." *NAACP v. Bell,* 448 F.Supp. 1164, 1166 (D.D.C.1978). This interpretation of "prevailing party" is consistent with the legislative history of Section 1988. The Senate report on the Civil Rights Attorneys' Fees Awards Act stated unequivocally:

> [F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.

Senate Rep. No. 94–1011, 94th Cong., 2d Sess. at 5 (1976), *reprinted in* 5 U.S.Code Cong. & Admin.News (1976) at 5912. The House report similarly eschewed a narrow interpretation of "prevailing party":

> The phrase "prevailing party" is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits. It would also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury. If the litigation terminates by consent decree, for example, it would be proper to award counsel fees . . . (citations omitted). A prevailing party should not be penalized for seeking an out-of-court settlement, thus helping to lessen docket congestion. Similarly, after a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award fees even though it might conclude, as a matter of equity, that no formal relief, such as an injunction, is needed.

House Rep. No. 94–1558, 94th Cong., 2d Sess. at 7 (1976). Thus, contrary to defendants' claim, the merits of the action are not controlling at this stage of the proceedings. We must determine only whether plaintiffs accomplished their objectives, and whether they did so as a result of this suit.

The discussion above concerns defendants' motion to dismiss the complaint on the ground that it failed to state a cause of action; but defendants also challenged our subject matter jurisdiction. While we will not reopen the merits of the controversy on a petition for attorneys' fees, we should make some initial determination of our jurisdiction. Otherwise, we might find ourselves in the anomalous position of granting attorneys' fees in a case which we are without authority to adjudicate.

The complaint alleged jurisdiction under 28 U.S.C. Sections 1343(3), (4),[1] which provides:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

Defendants argue that Section 1343 does not provide a jurisdictional basis for actions brought under the Social Security Act. *See Andrews v. Maher,* 525 F.2d 113 (2d Cir. 1975); *Acosta v. Swank,* 325 F.Supp. 1157 (N.D.Ill.1971). We may exercise pendent jurisdiction over a claim brought under the Social Security Act, however, where that claim is coupled with a constitutional claim

---

1. Plaintiff also claimed that we had jurisdiction under 28 U.S.C. Section 1337, which provides for jurisdiction over cases arising under an Act of Congress regulating commerce. Since we have determined that we have jurisdiction under 28 U.S.C. Section 1343, we need not reach the question of whether Section 1337 provides for jurisdiction over cases challenging a state's interpretation of the Social Security Act.

that is not "wholly insubstantial" or "obviously frivolous." *Hagans v. Lavine*, 415 U.S. 528, 537–38, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Wojcik v. Levitt*, 513 F.2d 725 (7th Cir. 1975). Paragraph 32 of the complaint alleges that defendants violated plaintiff's rights to equal protection of the laws. We find this constitutional claim not "wholly insubstantial," and we therefore have pendent jurisdiction over the Social Security Act claims.

Plaintiffs applied for extended benefits prior to January 28, 1978, when the extended benefit program terminated because the relevant unemployment indicator fell below a specified mark. None of the plaintiffs had yet exhausted their extended benefits at the time the program terminated. In fact, some of the plaintiffs had applied for benefits but not yet received any by January 28. The extended benefits program resumed in April of 1978, when unemployment again rose above the triggering level. Defendants denied extended benefits to plaintiffs, but granted them to others who had been eligible for benefits prior to January 28, but had not applied by that time. Thus, defendants discriminated among applicants not on the basis of whether they had *received* benefits before January 28, but on the basis of whether they had *applied* for benefits by that date. Plaintiffs claimed that this disparate treatment of similarly situated individuals was irrational and violated their right to equal protection of the laws. We cannot say that this constitutional claim is "obviously frivolous."

██ Having determined that we would have had jurisdiction to decide the merits of the case, we must now ascertain whether plaintiffs achieved the objectives of the litigation, and whether this suit was a "catalytic factor" in the victory. *See NAACP v. Bell, supra.* On both questions, we think the facts are with plaintiffs. Before suit was filed, one of plaintiffs' attorneys, Lucy Williams, contacted the Region V Office of the United States Department of Labor, and informed Michele Fox, an Unemployment Insurance Program Specialist, that defendants had issued a policy statement

covering extended benefits which, Ms. Williams urged, was contrary to federal law. Ms. Williams told Ms. Fox that she was drafting a complaint to challenge defendants' policy, and that she would file a lawsuit if immediate corrective action were not taken. At Ms. Fox's request, Ms. Williams mailed her a copy of defendants' bulletin. Later, Ms. Fox told Ms. Williams that the Department of Labor agreed with defendants' interpretation of eligibility under the Extended Benefit Program, and that a lawsuit might be necessary to change the policy. Ms. Fox subsequently announced that Labor was reconsidering its position on the issue of eligibility, but that months might pass before a legal opinion on the subject would be rendered. Plaintiffs' counsel filed this action on May 19, 1978, and sent a copy of the complaint to Ms. Fox. (Affidavit of Ms. Lucy Williams).

On June 14, the parties appeared before us on plaintiffs' motion to proceed as a class and motion for preliminary injunction or for summary judgment. Defendants' attorney informed us that "the Solicitor General is about to issue an opinion concerning the correctness of Illinois' interpretation of the federal law." (Transcript, at 7). In fact, no opinion from the Solicitor General was, or to our knowledge has yet been, rendered. Defense counsel was apparently referring to the Labor Department's re-appraisal of defendants' policy statement that had begun when Ms. Williams threatened this action. Two days before the scheduled hearing on the motion for a preliminary injunction, however, the Associate Regional Administrator for Unemployment Insurance in Region V sent a letter to defendant Moss expressing the legal opinion that "you have interpreted Federal law incorrectly . . . ." (Exhibit E). The next day, defendants agreed to change their policy. Plaintiffs and defendants then jointly moved to dismiss the action as moot. On August 8, the parties filed a voluntary stipulation to dismiss which stated, *inter alia:*

4. Defendants agree that all members of the putative plaintiff class who report to their local office and are determined eligible for extended unemployment insur-

ance benefits and who would have received extended benefits after April 30, 1978, but for the policy and practice challenged in the present case, will receive such extended benefits.

That the threat and then the filing of this lawsuit at least hastened defendants' change of policy is clear. That plaintiff achieved all of his original objectives, including retroactive benefit payments, which were not mentioned in the Moss letter, seems equally apparent. Under such circumstances, plaintiff was the "prevailing party" within the meaning of Section 1988.

In *NAACP v. Bell,* 448 F.Supp. 1164 (D.D. C.1978), plaintiffs brought a Section 1983 action challenging the Justice Department's policy of refraining from prosecuting under the federal civil rights statutes individuals who had already been subjects of state prosecution. After suit was instituted, the Attorney General issued a memorandum modifying the non-dual prosecution policy. The parties moved jointly to dismiss and plaintiffs then petitioned for attorneys' fees. The district court granted the petition, stating:

> To determine whether a party has prevailed in order to collect attorneys' fees under § 1988, the Court must focus on whether that party has accomplished the objectives of his litigation. (cites omitted). A party need not win a full trial on the merits to be said to prevail, but the lawsuit must have resulted in or been the catalyst of a victory for the party or the class he represents. (cites omitted).
>
> \* \* \* \* \* \*
>
> While the *Morales* case may have been the immediate motivation for the memo, the plaintiffs in this litigation also played a role in causing his action. In a situation such as this, where policy matters are concerned, plaintiffs should not be denied prevailing party status and attorneys' fees only because other citizens have paralleled their attempts to correct the offending policies.

448 F.Supp. at 1166–67.

This is an even stronger case for concluding that plaintiffs prevailed than was *Bell.*

In *Bell,* civil rights groups and national politicians had already pressured the Justice Department for a policy change by the time plaintiffs filed suit. Thus, as the court recognized in the above passage, forces other than the *Bell* litigation contributed to the policy change. Here, defendants tacitly admit that they adjusted their policy solely on the basis of the Moss letter. And, as we have seen, the threat of this suit precipitated the bureaucratic re-examination of defendants' bulletin that culminated in the Moss letter. The parties disagree as to the legal effect that should be given that letter. Whether the letter bound defendants to follow a different policy is, we believe, unimportant. That defendants acted upon the recommendations in the letter, and that this suit in a sense gave rise to the letter, make plaintiffs the prevailing party.

**2. *Whether Good Faith Is a Defense to a Request for Attorneys' Fees***

■ Defendants ask us to exercise our discretion and deny attorneys' fees because they acted in good faith. We do not think that would be a proper exercise of discretion. The legislative history of the Civil Rights Attorney's Fees Awards Act of 1976 demonstrates that Congress intended that a prevailing plaintiff should ordinarily recover an attorney's fee "unless special circumstances would render such an award unjust." S.Rep. No. 94–1011, 94th Cong. 2d Sess. at 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News, pp. 5908, 5912. We do not dispute defendants' good faith. On the contrary, we commend defendants for changing the challenged policy immediately after being advised by representatives of the U.S. Department of Labor that it was an erroneous interpretation of the federal statute. But a finding of good faith does not preclude the award of attorneys' fees. *See Hutto v. Finney,* 437 U.S. 678, 699, n. 32, 98 S.Ct. 2565, 2578, n. 32, 57 L.Ed.2d 522 (1978); *Henderson v. Fort Worth Independent School District,* 574 F.2d 1210, 1214 (5th Cir. 1978). Since we find no "special circumstances" in this case which "would render such an award unjust," we will award a reasonable attorneys' fee.

### 3. Whether a Legal Services Organization May Recover Attorney's Fees

■ Defendants next argue that because plaintiffs were represented by LAF, an organization funded by the Legal Services Corporation, they are not entitled to attorneys' fees. As defendants explain,

> An award of attorney's fees in this instance will not reimburse any fees paid by Plaintiffs, but will create another funding source for Legal Assistance Foundation, Inc., which has already been paid for handling this case by the federal government and, ultimately, the taxpayers. If Plaintiffs were to receive attorney's fees in this case, it would amount to a windfall or bonus to the Legal Assistance Foundation and serve to penalize Defendants . . . . Plaintiffs are given a choice between choosing private counsel and having him reimbursed through 42 U.S.C. Section 1988 or utilizing the Legal Services Corporation as they did in this case. To permit them the benefit of both remedies would not be in furtherance of Congressional intent.

(Memorandum in Opposition to Petition for Attorneys' Fees, at 3).[2] We disagree with defendants' reading of congressional intent. In reporting on the Attorneys Fees Award Act, the House Judiciary Committee stated, "Similarly, a prevailing party is entitled to counsel fees even if represented by an organization or if the party is itself an organization." H.Rep. No. 94–1558, n. 16.

The Seventh Circuit recently observed, in a Fair Housing Act case,

> When free legal services are provided there may be no direct barrier to the courtroom door, but if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere, thereby

curtailing the forceful application of the Act that Congress sought. Thus, the denial of fees in this situation indirectly cripples the enforcement scheme designed by Congress.

*Hairston v. R & R Apartments,* 510 F.2d 1090, 1092 (7th Cir. 1975). *See also, Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir. 1977) (attorneys' fees awarded to legal service organization in suit brought under the Age Discrimination in Employment Act).

Finally, a number of district courts have already reviewed and rejected the argument that attorneys' fees under Section 1988 should not be awarded a legal service organization. *See, e. g., WWRO v. Andreano,* No. 75–C–102 (E.D.Wis.1978); *Schmidt v. Schubert,* 433 F.Supp. 1115 (E.D. Wis.1977); *Lund v. Affleck,* 442 F.Supp. 1109 (D.R.I.1977). We will follow those decisions here.

### 4. Whether the Award of Attorneys' Fees Must be Reduced Because Plaintiffs' Counsel are Employed by the Legal Assistance Foundation

■ Defendants also contend that "if any amount is awarded to Plaintiffs' attorneys, it should be the amount of money they are currently earning pro rated per hour of time validly expended in this case." (Memorandum in Opposition to Petition for Attorneys' Fees, at 9–10). Again, we find this argument in contravention of the legislative intent of Section 1988. In reporting on the Attorneys' Fees Award Act, the House Judiciary Committee cited approvingly the case of *Fairley v. Patterson,* 493 F.2d 598 (5th Cir. 1974), in which the Court of Appeals reiterated its earlier holdings that "allowable fees and expenses may not be reduced because appellants' attorney was employed or funded by a civil rights organization and/or tax exempt foundation or because the attorney does not exact a fee." 493 F.2d at 606.

---

**2.** Defendants also contend that the Legal Services Corporation Act's prohibition against providing representation in fee-generating cases precludes an award of fees in this case. Defendants may not now raise this issue in this court. P.L. 95–222, Section 6(a), amending 42 U.S.C. Section 2996e(b)(1) (91 Stat. 1620, effec-

tive Dec. 27, 1977). The recent amendment also disposes of defendants' argument that the burden is on plaintiff's counsel to demonstrate compliance with regulations requiring referral of cases to private attorneys. *See* 45 C.F.R. Part 1609, Sections 1609.3, 1609.4.

Similarly, the Senate Judiciary Committee cited *Davis v. County of Los Angeles,* 8 EPD par. 9444 (C.D.Cal.1974). S.Rep. No. 94–1011, 94th Cong., 2d Sess. at 6 (1976). There the court noted that in determining a reasonable attorney's fee,

> [i]t is not legally relevant that Plaintiffs' counsel . . . are employed by the Center for Law in the Public Interest, a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner when its counsel perform legal services otherwise entitling them to the award of attorneys' fees.

*Id.* at 5048–49. Basing its award to counsel on hourly rates of $50.00 and $60.00 per hour, the court computed fees "in the traditional manner." Although *Davis* and *Fairley* were not Section 1988 cases, we find the references to them in the legislative history of that section persuasive evidence of a congressional intent that attorneys' fees be computed not on the basis of an attorney's salary, but on the basis of the value of his services.[3]

In this Circuit, Judge Marshall has awarded attorneys' fees under Section 1988 to members of the Illinois Migrant Legal Assistance Project, computing the fees from hourly rates of $50.00 and $60.00 per hour. *Gonzales v. Grabavoy,* No. 76 C 3933 (Memorandum Opinion of August 14, 1978, at 11). The *Gonzales* decision is consistent with the Seventh Circuit's opinion in *Hairston v. R & R Apartments,* 510 F.2d 1090, 1093 (7th Cir. 1975). There the court stated that "an organization providing free legal services stands in the same position as a private attorney to whom a fee is owed." 510 F.2d at 1093. Although the award in *Hairston* was authorized by the Fair Housing Act, 42 U.S.C. Section 3612(c), rather than Section 1988, the court's determination of "reasonable attorney fees" in that case is equally pertinent here. *Accord, WWRO v. An-*

*dreano,* No. 75–C–102 (E.D.Wis.1978) (fees to Legal Action of Wisconsin, Inc., assessed at rate of $45.00 per hour); *Schmidt v. Schubert,* 433 F.Supp. 1115 (E.D.Wis.1977) (fees to Corrections Legal Services assessed at rate of $45.00 per hour); *Lund v. Affleck,* 442 F.Supp. 1109 (D.R.I.1977) (fees to Rhode Island Legal Services assessed at rate of $60.00 per hour). *Contra, Alsager v. District Court of Polk County,* 447 F.Supp. 572, 577 (S.D.Iowa 1977) (attorneys' fees computed on basis of attorneys' salaries from ACLU).

### 5. Whether the Hourly Rates of Plaintiff's Counsel Are Reasonable

At various times, three LAF attorneys worked on this case. Attorney Masur, a 1973 graduate of Stanford Law School, has been practicing in Illinois for five years. According to his affidavit, he has "directed or been involved in numerous employment/civil rights cases in this district and has argued one case before the United States Supreme Court, one before the Seventh Circuit Court of Appeals and four cases in the Illinois Appellate Court, First Division." Mr. Masur requests fees computed from an hourly rate of $60.00. We believe such an amount is consonant with fees charged by attorneys of like experience in the area.

Attorney Williams is a 1974 graduate of the University of Chicago Law School who has practiced in this state for four years. She has argued one case in the Illinois Supreme Court and another in the United States Court of Appeals for the Seventh Circuit. She requests $50.00 per hour, and we find this request reasonable.

Attorney Gilbert, a 1975 graduate of the University of Chicago Law School, requests fees assessed at the rate of $40.00 per hour. We find this request also reasonable under the circumstances.

---

**3.** Were we to follow defendants' suggestion, we would presumably assess fees differently for associates of law firms, who are salaried, than for partners, whose compensation is related to their hourly billing rates. We do not feel that a variety of formulae is necessary, or even helpful, to a determination of what constitutes a reasonable fee.

### 6. Whether the Hours Reported by Plaintiff's Counsel Were Excessive

Defendants attack as excessive some of the hours reported by plaintiff's attorneys in their petition for fees. Defendants first claim that the hours spent in researching and drafting the motion to proceed as a class were wasted, since no ruling on that motion was ever issued, and since "if the policy was struck as to any one individual, it would be invalid as to anyone." (Memorandum in Opposition to Fee Petition, at 8). We disagree. The complaint sought retroactive benefits as well as injunctive relief. Even had defendants changed their policy prospectively, absent this litigation nothing would have compelled the payment of benefits illegally withheld. Moreover, had not plaintiffs filed the class motion, defendants might have refused to enter into a stipulated dismissal providing for class-wide monetary relief. At the time counsel presented the motion, it seemed a prudent and perhaps necessary tactic to achieve the objectives of the entire class. The motion was made in good faith, and we will grant attorneys' fees for time spent in its preparation.

What we have just said with respect to the motion to proceed as a class also applies to other matters presented to the court but never ruled upon because of the intervening policy change which mooted the action. We find attorneys' fees for all these items proper. See WWRO v. Andreano, No. 75–C–102 (Order of October 30, 1978, at 3).

Defendants claim that plaintiff's attorneys duplicated the work of one another. We find no evidence of that in the billing sheets submitted by them. Contrary to defendants' assertions, "reviewing and editing" are functions which all reasonably prudent attorneys perform.[4] We find the hours spent on these functions reasonably necessary for the prosecution of the case.

Finally, defendants argue that the time spent in preparing the petition for attorneys' fees should not be compensated.

We note that other courts have permitted compensation for time spent litigating the issues of fees, because "To hold otherwise would permit a deep pocket losing party to dissipate the incentive provided by an award through recalcitrance and automatic appeals." Souza v. Southworth, 564 F.2d 609, 614 (1st Cir. 1977); see also, Bowe v. Colgate-Palmolive Co., 443 F.Supp. 696 (S.D.Ind.1977). We note that had defendants not challenged plaintiff's petition for fees, the hours consumed in obtaining the fees would have been significantly reduced.

### 7. Conclusion

In light of the factors discussed—the experience and ability of plaintiff's counsel, the time and labor required, and the results obtained from the suit—we find the fees requested by plaintiffs' counsel reasonable under the circumstances.[5] We will award Attorney Robert Masur the sum of $2,955.00 (49¼ hours at $60.00), Attorney Lucy A. Williams the sum of $1,937.50 (38¾ hours at $50.00), and Attorney Alan S. Gilbert the sum of $1,010.00 (20½ hours at $40.00). Plaintiff's counsel should prepare and submit to us an appropriate order.

---

4. We trust that defense counsel also engage in "reviewing and editing," tasks they seem to denigrate here.

5. In determining the award of attorneys' fees in this case, we have attempted to follow the guidelines announced by the Seventh Circuit in Waters v. Wisconsin Steel Workers of International Harvester Co., 502 F.2d 1309, 1322 (7th Cir. 1974).