**Jan Randolph MARTIN, Plaintiff,**

**v.**

**CITY OF INDIANAPOLIS, Defendant.**

**No. IP 96–0330–C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 4, 1998.

Scott Hodes, Ross & Hardies, Chicago, IL, Jennifer E. Matthews, Martinsville, IN, for plaintiff.

Brian W. Welch, McHale, Cook & Welch, Indianapolis, IN, for defendant.

### ENTRY DENYING PLAINTIFF'S MOTION TO ALTER THE JUDGMENT AND AWARDING ATTORNEY'S FEES AND COSTS

BARKER, Chief Judge.

This matter comes before the Court on Plaintiff's motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) [1] and Plaintiff's petition for attorney's fees and costs. For the reasons set forth below, we *deny* Plaintiff's motion and award Plaintiff $131,252.55 in attorney's fees, costs and expenses.

### MOTION TO ALTER OR AMEND JUDGMENT

■ In an entry dated April 16, 1998, the Court awarded Plaintiff, Jan Martin ("Martin"), $20,000 in statutory damages and reasonable attorney's fees and costs, directing Martin to submit evidence of the attorney's fees and costs incurred in litigating the above-captioned matter. Martin filed a motion to alter or amend the judgment pursuant to Rule 59(e), contending that the Court wrongly concluded that enhanced statutory damages were not merited. Rule 59(e) provides the court an opportunity to correct its own errors, allowing a movant to direct the court's attention to "newly discovered evidence or a manifest error of law or fact." *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir.1995). However, a motion to alter or amend judgment "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986). In addition, Rule 59(e) "may not be used to raise novel theories that a party had the ability to address in the first instance." *Russell,* 51 F.3d at 749.

In his motion, Martin asserts that "willful" as used in the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.,* (the "Copyright Act"), and incorporated in the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A(a) ("VARA"), "encompasses a broader form of 'reckless disregard' than the Court chose to give it." Plaint.Mot.Br. at 1. Martin asserts that "willful" must be defined differently in the context of VARA, arguing that the facts in this case, involving the destruction of a unique work of art, mandate different treatment than that afforded in a commercial copyright infringement case, as "a copyright infringer commercially exploits a protected work by repeatedly engaging in a course of conduct, but does not jeopardize the preservation of the copyrighted work itself." Plaint.Mot.Br. at 2. Further, Martin contends that a violation of VARA is a "unique, one-time act" with "no course of infringing conduct" or "infringing acts which permit the artist to put the infringer on notice to stop." Plaint.Mot.Br. at 3.

Martin also argues that "everyone is presumed to know the law." Plaint.Mot.Br. at 3. As an extension of this argument, Martin points to other areas of the law where "willful" denotes a "voluntary, conscious, and intentional" act "as opposed to accidental." Plaint.Mot.Br. at 5 (citing cases involving willful failure to pay taxes, willful violation of the Age Discrimination in Employment Act and fraud under the federal securities laws). Martin raised this precise argument in his motion for statutory damages, though we did not address it specifically in our entry because we adjudge it entirely irrelevant to the discussion of statutory damages under the Copyright Act. Because there is a wide body of case law interpreting "willful" under the Copyright Act, we see no need to investigate how courts have defined "wilfulness" in other contexts. Further, we note that Martin's interpretation of "willful" would encompass any violation of VARA, on the ground that "ignorance of the law is no excuse," and would render the Copyright Act's distinction between statutory and enhanced statutory damages for "willful" infringement meaningless. In addition, as set forth in our prior entry, it is well established that "willful" for

---

**1.** We assume that Plaintiff moves pursuant to Rule 59(e), which governs a motion to amend or alter judgment, although Plaintiff's motion cites Rule 59(c), which governs the time for filing affidavits in a motion for a new trial.

purposes of enhanced damages under the Copyright Act means "willful infringement," incorporating the notion of intent or knowledge. *See* Entry, Apr. 16, 1998 at 4–5. Thus, we find Martin's argument unavailing.

■ The heart of Martin's arguments is that VARA violations should be treated differently from other copyright claims in respect to statutory damages, specifically, that the Court should adopt a broader definition of "willful" for VARA claims than that applied in commercial copyright cases. In so arguing, Martin ignores the fact that Congress specifically provided damages for VARA claims through the damages scheme already in place under the Copyright Act and made no distinction between VARA claims and other copyright claims, although having the opportunity to create an alternate remedy. *See* 17 U.S.C. § 501(a) (including violator of VARA in definition of "infringer" under the Copyright Act); 17 U.S.C. § 504 (outlining remedies for copyright infringement). As Martin himself stated in his reply brief to his motion for statutory damages:

> Congress ... provid[ed] ... that "the same standards that the courts presently use to determine whether such relief [monetary damages and injunctive relief] is appropriate for violation of Section 106 rights will apply to violations of Section 106A rights as well." H.R.Rep. No. 514, 101st Cong., 2d Sess. 21 (1990), *reprinted* in U.S.C.C.A.N. 6915, 6932. Nowhere does the Copyright Act distinguish between the amounts available as statutory damages to a copyright or VARA plaintiff.

Plaint.Rep.Br., Mot.Stat.Dam. at 4.

We interpret Congress' inclusion of VARA violations within the statutory scheme providing recovery for copyright violations as a clear indication that Congress intended VARA claims to be governed by the same definition of "willful" violation for enhanced statutory damages. Martin also ignores the punitive purpose of enhanced damages under the Copyright Act, to discourage deliberate violation of the copyright laws. *See, e.g., Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 514 (7th Cir.1994). Even if we were to consider adopting an alternative definition of "willful," Martin's

proffered definition would render meaningless the distinction between statutory and enhanced statutory damages. Absent an explicit congressional directive that VARA claims should be treated differently from other copyright claims by the courts in awarding damages, we see no reason to adopt an alternative definition of "willful."

■ In addition, we note that Martin argues that the Court should have found that the City "recklessly disregarded" his VARA rights, based on the fact that "the project agreement and the letters that Martin sent to the City, coupled with the presumption that everyone is bound to know the law, were sufficient to require the City to submit the issue to its law department, retain counsel or do some basic research *before* destroying the work." Plaint.Mot.Br. at 6 (emphasis in original). However, Martin misses the thrust of the Court's ruling. As we stated in our previous entry, "Although the parameters of what constitutes willfulness for purposes of § 504(c)(2) have not been developed fully, the facts of this case do not require us to create a more comprehensive standard.... Martin does not assert that the City knew about the existence of VARA or that Martin gave the City notice of his rights under copyright law or that the City recklessly disregarded such rights; Martin maintains instead that the City recklessly disregarded *his contractual and ownership rights.*" Entry, April 16, 1998 at 5–6 (emphasis added). In his motion for statutory damages, Martin attempted to equate his contract rights with his rights under VARA, which argument we rejected, and Martin has presented no compelling reason for us to reconsider our ruling. Furthermore, we do not believe that the copyright laws require defendants to undertake the level of additional effort and investigation Martin proposes to avoid a finding of willful infringement of VARA rights, particularly as we find that the maxim "ignorance of the law is no defense" has no application in the realm of enhanced statutory damages for copyright infringement. Having considered all of Martin's arguments, we find no manifest error of law or fact and accordingly *deny* Martin's motion to

alter or amend the judgment pursuant to Rule 59(e).

### MARTIN'S PETITION FOR ATTORNEY'S FEES AND COSTS

■ In the Court's entry dated April 16, 1998, we awarded Martin reasonable attorney's fees and costs in bringing this lawsuit and instructed Martin to file a bill of costs and affidavits from his attorneys, including detailed billing records. Title 17 U.S.C. § 505 permits the Court to award full costs and reasonable attorney's fees to the prevailing party in an infringement suit under the Copyright Act. *See* 17 U.S.C. § 505. Courts enjoy wide discretion in determining the amount of attorney's fees and costs to be awarded. *See Florin v. Nationsbank of Georgia,* 60 F.3d 1245, 1247 (7th Cir.1995); *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 518–519 (7th Cir.1993).

■ The starting point for calculating the appropriate amount of attorney's fees to award a prevailing plaintiff is the "lodestar," as determined by "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Dunning v. Simmons Airlines, Inc.,* 62 F.3d 863, 872 (7th Cir.1995) (quoting *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989)). Martin's attorneys, Jennifer Matthews and the law firm of Ross & Hardies, submitted a verified petition for reimbursement of legal fees in the amount of $132,786.50 and costs in the amount of $6,968.56, for a total of $139,-755.06. Defendant objects to the fees and costs detailed by Martin's attorneys, seeking a reduction in the amount of fees to a maximum of $75,440.17 and limiting costs to $4,330.84.

■■ A reasonable hourly rate for use in the calculation of the lodestar figure is usually the market rate for the attorney's services, or "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *McNabola,* 10 F.3d at 519. However, the Seventh Circuit held in *People Who Care v. Rockford Bd. of Educ.,* 90 F.3d 1307, 1310 (7th Cir.1996) that "the

attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." The court in *People Who Care* held that only when the attorney's actual billing information is unavailable should the court turn to "the next best evidence," the market rate for similarly-skilled attorneys in the community. *Id.; see also Tomazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm"). Indeed, as the district court stated in *Strauss v. Springer,* 817 F.Supp. 1237, 1243 (E.D.Pa.1993), "Ordinarily, the attorney's own billing rate for private clients will [reflect an attorney's skill, reputation and experience]; however, in extreme cases, this rate may be reduced when it is so far above the standard community rates for competent counsel that it would be unfair to impose this rate upon the defendant."

Martin's counsel provided to the Court the standard billing rates for each of the attorneys working on the case, as shown in the following chart:

| Attorney | Hourly Rate | | |
|---|---|---|---|
| | 1996 | 1997 | 1998 |
| Scott Hodes | $300 | $300 | $305 |
| Kurt H. Feuer | $200 | $205 | $215 |
| Thomas D. Drescher | $165 | $170 | $175 |
| Keith P. Schoenberger | $___ | $240 | $___ |
| Gary L. Starkman | $___ | $___ | $260 |
| Arnold E. Grant | $225 | $___ | $235 |
| Jennifer Matthews | $ 75 | $ 75 | $ 75 |

*See* Plaint. Fee Pet. ¶ 21; Append. F. In addition, the attorneys for Martin provided the affidavits of Thomas P. Sullivan, Esq., who attests to Mr. Hodes' exceptional reputation as an attorney in the Chicago legal community, and Steve Zlatos, Esq., who asserts that he reviewed the billing rates set forth in the fee petition and believes that the billing practices detailed in the petition "are *reasonable and consistent with customary lit*igation billing practices in the Indianapolis metropolitan legal community." Plaint. Fee Pet., Append. A.

■ Defendant challenges the billing rates of certain of Martin's attorneys, providing its own affidavit regarding the billing rates in

the Indianapolis community.[2] Specifically, Defendant challenges the rates of (1) Scott Hodes, a senior partner, at $300 to $305 per hour for an average of $300.59, and (2) Thomas Drescher, a senior associate, at $165 to $175 per hour for an average of $166.96. However, we already have the best evidence of a reasonable rate: the attorneys' own billing rates. Even considering the affidavit of Daniel L. Boots, Esq. submitted by Defendant as evidence of the market rate in Indianapolis, we find that the rates claimed by Mr. Hodes and Mr. Drescher do not exceed the "market" as represented by Mr. Boots to such a degree as to be unfair to Defendant. Mr. Boots states that he is "aware of attorneys who have charged as much as $300 per hour for this type of work," though opining that such a rate is "rare," estimating the usual rate to be between $175 and $275 per hour. Def. Obj. Fee Pet., Append. G at ¶ 5. Mr. Boots also asserts that "senior associates dealing with copyright litigation typically charge approximately between $150 and $175 per hour." *Id.* Mr. Hodes' usual billing rate does not exceed Mr. Boots' estimation by much and besides, we note that Mr. Hodes is not an Indianapolis attorney but a Chicago attorney, where billing rates generally exceed those found in Indiana. Mr. Drescher's rates fall squarely within the rates Mr. Boots lists and thus we cannot see that Mr. Boots' affidavit aids Defendant in challenging the reasonableness of Mr. Drescher's billing rates. In any event, we find that the rates of Mr. Hodes and Mr. Drescher are not "so far above the standard community rates for competent counsel" as related by Mr. Boots as to be unfair to Defendant. Having disposed of Defendant's arguments with respect to the billing rates of Martin's counsel and seeing no reason to reduce the attorneys' billing rates in computing the lodestar figure, we will now consider whether the claimed hours were "reasonably expended."

■■■■ The Court must exclude hours from the lodestar calculation that were not reasonably expended, such as time that is excessive, duplicative, unnecessary or not properly documented. *See Hensley v.. Eckerhart,* 461 U.S. 424, 433–434, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40 (1983). The Court may reduce an attorney's hours on the basis of such considerations as (1) the attorney failed to achieve a successful result, (2) her work was inefficient or duplicative or (3) she failed to document her time adequately. *See People Who Care,* 90 F.3d at 1314. Martin's attorneys claim that they expended a total of 749.50 hours in litigating this case. Defendant seeks a reduction of 188.18 of these hours in calculating the lodestar figure.

■■■■ Defendant first asks the Court to exclude 90.3 hours, contending that "the inordinate amount of time spent by Plaintiff's counsel researching and learning the law is inconsistent with Plaintiff's attorneys' position that they have specialized knowledge in this area of the law." Def. Obj. Fee Pet. at 4. Counsel for Martin replies that the amount of time spent researching copyright law and VARA was reasonable because of the relatively limited case law available interpreting VARA and the need to review legislative history and rely upon legal treatises to a greater extent than usually required in a typical copyright infringement case. After examining the detailed billings that Defendant challenges, as found in Defendant's Appendix A, we do not find such hours excessive or unreasonable in litigating this case. The hours that Defendant objects to include time spent reviewing the background facts of the case, drafting the complaint, writing research memoranda, preparing the summary judgment motion, attending a deposition, and countless other tasks performed in the usual course of litigating a case. Although the attorneys also spent time researching the Copyright Act, and VARA in particular, again, legal research is part of the regular practice of law, and we do not find any of the hours spent on these tasks to be inordinate or excessive.

---

**2.** Defendant makes much of the fact that Martin hired attorneys from Chicago rather than an Indianapolis law firm. We do not refine too much upon this decision, which does not seem to be an unreasonable or extravagant choice by Martin, particularly considering the expertise of Scott Hodes in art law and the fact that Chicago is a major legal market not far removed from Indianapolis.

Defendant also opines that, "Clients in Indianapolis' legal market would not pay for the repetitive proofing and revising that was done by Plaintiff's attorneys. Several time entries reveal that Plaintiff's attorneys completed numerous revisions and had multiple attorneys working on the same project." Def. Obj. Fee Pet. at 5. Defendant disputes a number of charges, including (1) time spent drafting, reviewing and revising discovery documents (10.1 hours), (2) time spent by three attorneys preparing a case management plan (11 hours), (3) time spent by two attorneys attending a deposition (16 hours), (4) travel time from Chicago to Indianapolis, (5) time spent by three attorneys and one paralegal preparing the summary judgment motion (64.6 hours), (6) time spent seeking admission pro hac vice (3.2 hours), (7) time spent reviewing local rules and newspaper articles (6 hours) and (8) time spent preparing motion to alter or amend the judgment (34.3 hours)

■■■ Reviewing the billing records submitted by Martin's counsel, we find that some of the time challenged by Defendant is excessive or duplicative, but the majority of the time is reimbursable. "[R]eviewing and editing are functions which all reasonably prudent attorneys perform." *Lackey v. Bowling,* 476 F.Supp. 1111, 1118 (N.D.Ill. 1979). In addition, Martin's attorneys argue the necessity and efficiency of having two attorneys attend the deposition; Mr. Feuer is an experienced trial attorney and Mr. Drescher specializes in intellectual property. *See* Plaint. Rep. Fee Pet. at 8–9 (citing *Kurowski v. Krajewski,* 848 F.2d 767, 776 (7th Cir.1988) (time spent by multiple attorneys on different aspects of a case may reduce total expenditures by enhancing efficiency)); *Berberena v. Coler,* 753 F.2d 629, 633 (7th Cir.1985) (participation of nonprimary attorneys in strategy conferences, negotiations, and meetings is not unnecessary or excessive if crucial to the attorney's subsequent participation in the case). However, we find it appropriate to allow the attorney questioning the witness at deposition, Mr. Feuer, to bill the full amount of time he spent at the deposition but to limit Mr. Drescher, the intellectual property specialist, to only half his time, or 4 hours. Defendant

also claims that the Court should exclude the time Martin's attorneys spent preparing a motion to appear pro hac vice because Martin could have and should have retained local counsel and thus such hours are unreasonable. As we have already considered and rejected Defendant's argument regarding the appropriateness of Martin's retaining Chicago lawyers, we find no merit in Defendant's specific objection, but we do find 3.2 hours excessive for preparing a simple motion made regularly by attorneys and thus reduce the chargeable time to 0.5 hours. Similarly, we find 11 hours to prepare a case management plan excessive and so reduce this time to 3 hours. We also find the time spent reviewing the local rules and reading newspaper articles to be excessive and reduce this time to 2 hours.

Defendant does not explain why it believes the attorneys' travel time between Chicago and Indianapolis for attending a deposition is unreasonable, but we assume it objects to this charge on the same basis as the pro hac vice motion—arguing that Martin should have hired Indianapolis counsel—and thus we reject it for the same reason. Further, we note that attorneys regularly bill clients for time spent traveling on client business and the travel charges in this case do not seem excessive. Defendant also requests that the Court deduct the hours Martin's lawyers spent preparing the motion to alter or amend the judgment on the ground that such motion was frivolous, unfounded and not proper under Rule 59(e). *See* Def. Obj. Fee Pet. at 7. Although we have no reason to believe that Martin's attorneys filed the motion in bad faith, we note that the motion was unsuccessful ultimately and thus conclude that the hours spent preparing the Rule 59(e) motion should be reduced by half, or 17.15 hours.

Accordingly, we will deduct 4 hours from Mr. Drescher's time spent attending a deposition, for a total of $667.84. We will deduct 2.7 hours from the time spent preparing the motion for admission pro hac vice, 1.7 hours from Mr. Drescher and 1.0 hours from Mr. Feuer, for a total of $485.78. We will deduct 8 hours from the time spent preparing the case management plan, all of it from Mr. Drescher, for a total of $1335.68. We will

deduct 4 hours from the time spent reading local rules and newspapers, 1.3 hours from Mr. Drescher and 2.7 hours from Mr. Feuer, for a total of $762.31. We will also deduct 17.15 hours from the time spent preparing the motion to alter or amend judgment, 5.15 hours from Mr. Drescher, 3.2 hours from Mr. Hodes, 0.6 hours from Jennifer Kiszka,[3] 2.2 hours from Arnold Grant and 6.0 hours from Gary Starkman, for a total of $3932.04. Thus, the total amount deducted is $7183.65 and the lodestar figure we will use is $125,-602.85.

The Court may adjust the lodestar figure upward or downward in light of the factors set out in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974). *See Spellan v. Board of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir.1995); *Estate of Borst v. O'Brien*, 979 F.2d 511, 516 (7th Cir.1992).[4] Several of these factors have already been considered in determining the lodestar figure.[5] According to the Seventh Circuit, the most critical of these factors is the degree of success obtained. *See Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir.1995); *Bristow v. Drake St. Inc.*, 41 F.3d 345, 352 (7th Cir.1994) ("reasonableness implies commensurability with results obtained"); *see also Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. A fee award, although it should be commensurate with the results, "need not be proportionate to the damage award." *Estate of Borst*, 979 F.2d at 516 (upholding a fee award 47 times the amount of damages); *see also Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir.1994).

The damage award in this case was $20,000, the maximum recovery for statutory damages under the Copyright Act.[6] While the monetary award may seem small, Martin's attorneys achieved complete success on the merits of Martin's claims, successfully disposing of the case on summary judgment, which is an impressive feat. Considering the level of success attained by Martin's counsel of his behalf, we see no reason to depart downward from the lodestar figure.[7] At the same time, we find that the amount of fees, calculated above is adequate to compensate Martin's counsel for their time and efforts expended on this case and thus find no reason to increase the recovery for attorney's fees from $125,602.85, and Martin's attorneys do not request an increase.

Defendant also objects to $2,637.72 of the costs claimed by Martin's attorneys. Defendant claims that the Court should deduct the charges listed for (1) airfare and other travel expenses from Chicago to Indianapolis ($1085.55), (2) long-distance telephone calls ($265.65) and (3) postage and Federal Express services ($161.22) on the basis that

---

**3.** Jennifer M. Kiszka is a library assistant at Ross & Hardies, billed at an average rate of $72.31 per hour. *See* Plaint. Fee Pet. ¶¶ 21, 23.

**4.** These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

**5.** For instance, the time and labor required, the customary fee and the experience, reputation and ability of the attorney are factors taken into account in determining the number of hours and the hourly rate to be applied in calculating the lodestar.

**6.** Enhanced statutory damages were not available because the facts did not support a finding of willful infringement, as discussed in the Court's entry awarding statutory damages.

**7.** We note that Defendant asserts that Martin achieved only a limited result in this matter because "Plaintiff tried to establish a value to his claim which far exceeded any amount to which he was entitled," thus hindering settlement. *See* Def. Obj. Fee Pet. at 12. However, such an assertion ignores the fact that Martin achieved total victory on his claims on summary judgment and had no obligation to reach settlement, particularly as the actual amount of damages is often difficult to calculate. Further, we (properly) do not have before us the amount offered to Martin in settlement, as such negotiations are confidential, and we do not consider Martin's refusal to settle the case for some unspecified amount as a sufficient reason to reduce the award of attorney's fees.

such expenses were incurred because Martin unnecessarily retained out-of-town counsel. We have already rejected this argument and do so again here. Defendant also disputes certain unidentified expenses, including $1003.30 for "outside services" and $122.00 for "Marbaugh." Martin's attorneys clarify in their reply brief that the expenses incurred for "Outside services" and "Marbaugh" were for outside photocopying services from February to November 1996. *See* Plaint. Rep. Fee Pet. at 10; Append. A–B.

However, some of the costs listed by Martin's counsel, *including travel expenses, long-distance telephone calls, photocopying services and express mail charges,* are more properly labeled "litigation expenses," which generally are compensable as part of a reasonable attorney's fee, rather than costs. *See, e.g., Pinkham v. Camex, Inc.,* 84 F.3d 292, 294–295 (8th Cir.1996) ("reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys ... should have been included as part of the reasonable attorney's fees awarded"); *Downes v. Volkswagen of America, Inc.,* 41 F.3d 1132, 1144 (7th Cir.1994) (same); *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1216 n. 7 (9th Cir.1986) (same); *Bennett v. Central Telephone Co. of Illinois,* 619 F.Supp. 640, 643 n. 1 (N.D.Ill.1985) ("Such expenses are consistently treated as recoverable as part of 'attorneys' fees' in the broad sense"). Having reviewed the expenses claimed by Martin's attorneys, we find that the amounts charged for airfare, long-distance telephone calls, photocopying and other services are reasonable and not excessive. However, we are loath to condone the practice of double-billing, for example, billing the client for the attorney's billable hours spent traveling on client business as well as the travel expenses, and so we will reduce by half the amount allowable for purposes of litigation expenses, as challenged by Defendant ($1,318.86) since we have awarded a quite satisfactory attorney's fees amount. With this modification, we find that these expenses are reasonable and so award recovery in the amount of $5,649.70.

*CONCLUSION*

For the reasons set forth in the discussion above, we *deny* Martin's motion to alter or amend the Court's prior judgment awarding Martin $20,000 in statutory damages for Defendant's infringement of Martin's rights under VARA and award Martin $131,252.55 in attorney's fees, costs and expenses.