James E. STRAUSS, Plaintiff,

v.

Richard SPRINGER, and Robert Clift, and the City of Philadelphia, Defendants.

Civ. A. No. 91–439.

United States District Court, E.D. Pennsylvania.

Jan. 28, 1993.

MEMORANDUM

LEOMPORRA, United States Magistrate Judge.

Re: *Plaintiff's Motion for Counsel Fees and Costs*

The plaintiff, James Strauss, has filed a Motion for Counsel Fees and Costs pursuant to 42 U.S.C. § 1988, and Federal Rule of Civil Procedure 68. Strauss sued Officers Richard Springer and Robert Clift and the City of Philadelphia under 42 U.S.C. § 1983, claiming violations of his civil rights due to the allegedly excessive force used by Springer and Clift in his arrest. At trial, the jury found against the officers with regard to the unreasonable use of force and awarded the plaintiff $11,760.11.[1]

Title 42 U.S.C. Section 1988 provides:

In an action or proceeding to enforce a provision of Section 1981, 1982, 1983, 1985 and 1986 of this Title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

The Supreme Court has stated that with regard to § 1983 actions, a successful party vindicating protected rights "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *see also Hensley v.*

---

1. This jury verdict is outlined in detail, *infra.*

*Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *Fletcher v. O'Donnell,* 729 F.Supp. 422, 425 (E.D.Pa. 1990).

In order to determine the proper fee to be awarded plaintiff, the court must first determine whether Strauss was the prevailing party as required under 42 U.S.C. § 1988. If so, it must next be determined what the appropriate hourly rate and if the time charged by counsel is reasonable. In this case, a further analysis is required to determine whether a proper settlement offer was made which would preclude plaintiff the recovery of any fees accruing after the offer date. *Fed.R.Civ.P. 68; Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).

### 1. Prevailing Party

As noted above, § 1988 requires that a party prevail in its litigation in order to receive counsel fees. The Supreme Court in *Texas State Teachers Assn. v. Garland,* 489 U.S. 782, 791–792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989), stated that "if the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefits the party sought in bringing the suit, the plaintiff has crossed the threshold to a fee award of some kind." Additionally, the court in *Fletcher v. O'Donnell, supra,* stated "the inquiry is generally not particularly involved; as the Court of Appeals has put it, '[u]sually a common sense comparison between relief sought and relief obtained will be sufficient to indicate whether a party has prevailed.'" 729 F.Supp. at 425, *citing Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 911 (3d Cir.1985).

 Trial in the instant case commenced on June 9, 1992. At the close of all the evidence and after the court had given its instructions, the jury was given special interrogatories to be answered during its deliberation and returned to the court as its verdict on June 19, 1992. The jury came back with the following verdict:

1. Officers Richard Springer and Robert Clift violated plaintiff's constitutional rights under § 1983 by using excessive force;

2. The City of Philadelphia did not have a custom, policy, or regulation which deprived plaintiff of his constitutional rights under § 1983;

3. Officers Springer and Clift did not commit an assault and battery upon the plaintiff on August 28, 1989;

4. Officers Springer and Clift were 40% negligent in their actions on the night in question;

5. Plaintiff, James Strauss, was found 60% contributorily negligent;

6. The City of Philadelphia was responsible for the negligence of their officers;

7. Under Pennsylvania comparative negligence law, the percentage of negligence attributable to the officers was found to be 40%, and the percentage of negligence attributable to the plaintiff was assessed at 60%, thereby foreclosing any recovery for the plaintiff for negligence against the officers or the City;

8. Officers Springer and Clift's actions were not done wilfully, maliciously, wantonly with reckless disregard for the plaintiff's constitutional rights and no punitive damages were awarded;

9. Damages were awarded against the City of Philadelphia only in the amount of $5,260.11 for past medical expenses, $2,500.00 for future medical expenses, and $4,000.00 for past loss of earnings, totalling $11,760.11;

10. No damages were awarded against Officers Springer and Clift.

This verdict was entered on July 1, 1992. Although plaintiff did not achieve success on every aspect of the litigation, when viewing the outcome as a whole, it is clear that Strauss is the prevailing party based on the jury's conclusion that his civil rights were ultimately violated by the use of excessive force by the officers. As such, the plaintiff is entitled to recover attorney's fees.

### 2. Plaintiff's Application for Counsel Fees

Plaintiff's initial fee petition was filed on August 20, 1992, and requested $159,061.50 for counsel fees; $35,245.84 for costs and expenses, and $7,985.50 for fees related to the preparation of their petition, for a total

request of $202,292.84. However, on November 25, 1992, plaintiff requested the court leave to amend its fee petition in order to add $10,875.29 to the total fee request. Plaintiff states that this figure, which represents costs incurred and services performed between March 1990 and March 1991, was originally omitted because of a clerical error. Of the $10,875.29 requested, plaintiff lists $4,934.00 in attorneys' fees and $144.63 in expenses incurred before September 18, 1990—the date defendants made their offer of settlement. The remaining $5,796.66 plaintiff asserts was incurred between September 18, 1990 and March 1991.[2]

Plaintiff also at this time elected to reduce his total request by $12,443.50, a figure which represents his expert witness fees. As a result, plaintiff now asks the court to award him $169,633.50 for attorney's fees,[3] plus $23,105.63 for costs and expenses, plus $7,985.50 for preparation of this fee petition, for a total of $200,724.63. Over objections by the City alleging the lateness of the requested amendment and the lack of substantiation, the court will grant the plaintiff's motion to amend the fee petition.

■ I am allowing the amendment to the fee petition although the request was unusual and very late. At the time and during the oral argument on the fee petition proper, and after briefs were filed, plaintiff's attorney handed up the requested amendment to which defendant objected. Defendant stated that by allowing the fortuitously found amendment, plaintiff's attorney has managed to add a further claim which would bring the fees plus the jury award over the $20,000.00 limit. Defendant objected to the surprise request and argued that it was unfair and exaggerated and made in order to exceed the $20,000.00 offer and thereby defeat the pur-

poses of Rule 68 and the cases cited herein. Acknowledging surprise and recognizing that the amended petition created charges that had to be examined closely, I required briefs to be filed to support each attorney's arguments addressing the issues. I have allowed the amendment and have reviewed plaintiff's contentions carefully.

### 3. The Settlement Offer

■ The ability to recover counsel fees has been significantly curtailed by the Supreme Court in the case of *Marek v. Chesny, supra.* In *Marek*, it was firmly established that a civil rights defendant is not liable for counsel fees and costs incurred after a pretrial settlement offer where the judgment recovered by the plaintiff is less than the offer. The court articulated its rationale:

> Section 1988 authorizes courts to award only "reasonable" attorney's fees to prevailing parties.... [W]e held that the "most critical factor" in determining a reasonable fee "is the degree of success obtained." ... In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the post-offer services of his attorney.

473 U.S. at 11, 105 S.Ct. at 3017. "In determining whether the result is more favorable to the plaintiff than the offer he rejected, the attorney's fees and costs that accrued before the offer must be added to the judgment." *Lawrence v. City of Philadelphia,* 700 F.Supp. 832 (E.D.Pa.1988).

On September 18, 1990, *prior to suit being instituted,* the defendants, through counsel, made an oral offer to James Strauss of settlement for $20,000.00.[4] This offer was re-

---

**2.** The effect of the amended fee petition, as it relates to the September 18, 1990 settlement offer date will be discussed thoroughly, *infra.*

**3.** This total for fees is based upon a total of 1,234.85 hours worked by attorneys Bruce Schwartz (52.80 hours at $130.00 per hour); David Michelman (141.1 hours at $175.00 per hour and 39.2 hours at $150.00 per hour); Joseph McGill (162.3 out-of-court hours at $175.00 per hour and 54.5 in-court hours at $200.00 per hour); Marlene Fleming (654.25 hours at

$130.00 per hour); and three (3) student assistants, Andrea Gigante (27.6 hours); Andrew Graham (48.5 hours); and James Stoltzfus (54.6 hours) all at the hourly rate of $60.00 per hour. The reasonableness of these hours and rates will be discussed, *infra.*

**4.** Defendants' offer did not specifically list attorney's fees as part of the offer, however, as it is stated in *Marek,*

> "it is immaterial whether the offer recites that costs are included, whether it specifies this

jected in a detailed letter of acknowledgement, by the plaintiff's counsel to counsel for defendants dated September 21, 1990. In this correspondence, plaintiff's counsel discusses the terms of the release posed by the defendants in detail and makes a counter offer of $55,000.00. Additionally, plaintiff stated that he would withhold filing suit until October 5, 1990, in order to assist defendants in evaluating the new proposal.

Plaintiff argues that the *Marek* decision is inapplicable in this case for several reasons. *First,* plaintiff argues that the settlement offer is invalid for purposes of Rule 68 because it was not a written offer. *Second,* plaintiff contends that the judgment, when added to his attorneys' fees and costs as represented by the amended fee petition, exceeds the $20,000.00 settlement offer. Each of these arguments will be addressed below.

### a. *Oral Offer of Settlement*

Plaintiff contends that defendants' $20,000.00 settlement offer, made on September 18, 1990, falls outside the scope of Federal Rule of Civil Procedure 68,[5] and the *Marek* decision because defendants' offer was not written.

The law with regard to settlement offers and Rule 68 is clearly enunciated by the Supreme Court in *Marek, supra.* As was noted above, *Marek* holds that petitioners are not liable for the attorney's fees incurred by a defendant after petitioner's offer of settlement. In discussing its reasoning for the holding, the Court stated: "The construction of the Rule [68] best furthers the objective of the rule, which is to encourage settlements." *Marek,* 473 U.S. at 6, 105 S.Ct. at 3015. The Court further reasoned that "application of Rule 68 will serve as a disincentive for the plaintiff's attorney to continue

litigation after the defendant makes a settlement offer.... Moreover, Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs or defendants; it expresses a clear policy of favoring settlements of all law suits." *Id.* at 10, 105 S.Ct. at 3017.

*Marek* is silent on the issue of whether an oral offer satisfies the requirements of Rule 68. However, other circuits have addressed this issue. In *Grosvenor v. Brienen,* 801 F.2d 944 (7th Cir.1986), the court held that an oral offer of judgment was not enough to satisfy the requirements of Rule 68:

> We agree. Rule 68 expressly requires that an offer of judgment be "served" upon the plaintiff. Rule 5(a) provides that an "offer of judgment ... shall be served upon each of the parties." Furthermore, Rule 5(b) provides that "[s]ervice ... shall be made by delivering a *copy* to [the party or his attorney]" (emphasis added). To accept the defendants' position would lead to the unsupportable conclusion that one can "serve" an oral statement. Thus, although Rule 68 does not specify that an offer of judgment be in writing, the requirement that the offer be served upon the plaintiff makes no sense unless it means that the offer must be written.

*Id.* at 948.

This language was supported by Judge Cahn in *Fletcher v. O'Donnell, supra* at 431, where he wrote, "such an offer must be properly served in accordance with the Rule 5; thus, it may not be oral even if it is made at a settlement conference."

■ In the instant case, defendants admittedly made an oral offer to settle all claims against them by plaintiff for $20,000.00. However, this offer was memorialized by the plaintiff in a letter dated September 21, 1990,

---

amount the defendant is allowing for costs or for that matter, whether it refers to costs at all. As long as the offer does not implicitly or explicitly provide that the judgment *not* include costs, a timely offer will be valid." 473 U.S. at 6, 105 S.Ct. at 3015 (emphasis in original).

**5.** Rule 68 provides in part:
 At any time more than 10 days before the trial begins, a party defending against a claim

may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.

rejecting that offer and its terms and proposing a counter offer. In that letter, plaintiff states:

> On September 18, 1990, you informed me that the City was willing to offer $20,-000.00 to my client, James Strauss, in settlement of his claims against the City. You indicated that such settlement would be predicated upon a full release which included (1) the release of all claims involving any aspect of any potential case (including claims for civil rights violations, negligence, malicious prosecution, abuse of process, and false arrest as well as delay damages, interest, attorneys' fees, and punitive damages); (2) a release running not only to the City of Philadelphia itself, but also to all of the City's employees or agents (specifically including the two police officers involved in the shooting, and also releasing such employees or agents from liability in their personal capacity as well as in their official capacity.)

Defendant argues that plaintiff's correspondence accomplishes the requirement of writing articulated in *Grosvenor* and *Fletcher, supra*. I agree.

In *Fletcher*, Judge Cahn refused to bar attorneys fees after the date of a settlement offer because the only settlement offer for which evidence was presented was made *after* the trial. Judge Cahn stated:

> "Even after an order of this court directing the parties to provide full information on settlement offers, the only written offers for which evidence was supplied were made *after* the trial. These fall outside the scope of Rule 68. Earlier offers were oral and thus not preclusive."

*Fletcher v. O'Donnell,* 729 F.Supp. at 431 (emphasis in original).

A careful reading of this language in *Fletcher* clearly reveals that the concern of the court is not the manner in which an offer is conveyed, but rather whether there is sufficient evidence supporting an offer's terms and conditions.

Similarly, in *Grosvenor v. Brienen, supra,* the Seventh Circuit stated:

> "The effect of a rejected offer of judgment is determined by the terms of the offer as they existed at the time the plaintiff rejects it. It would be ill-advised to impose the risk on a plaintiff of the ambiguity of an oral offer made at a settlement conference."

*Grosvenor v. Brienen,* 801 F.2d at 949.

Thus, the court in *Grosvenor* is in accord with the Eastern District of Pennsylvania in *Fletcher* when it places emphasis not on the oral nature of an offer, but rather on the ambiguity and confusion such an offer potentially has.

Plaintiff in the instant case has crystallized the amount, terms and conditions of defendants' September 18, 1990 offer in minute detail in his September 21, 1990 letter. The clear intent of the courts in *Grosvenor* and *Fletcher, supra,* is to eliminate *ambiguity* in settlement offers. Moreover, a common sense analysis of plaintiff and defendants' exchange here leads me to conclude that Rule 68's requirement of writing is wholly satisfied in this case. The primary focus on avoiding oral offers necessarily lies in their uncertain and ambiguous nature. This, however, is not the case here where there is *no* dispute that plaintiff received the offer and understood its terms. Therefore, since I find a valid settlement offer was made by the defendant to the plaintiff, the court's next inquiry is whether the amount of that offer exceeds plaintiff's judgment plus reasonable fees and costs so as to preclude post-offer attorneys' fees.[6]

b. *Plaintiff's judgment plus attorneys' fees and costs*

Plaintiff states that the total judgment in this case, when added to counsels' fees and costs accrued up to the date of defendants'

---

6. Plaintiff also argues that defendants' "offer of settlement" is distinct from Rule 68's "offer of judgment." I believe the difference in phrasing is more syntactical than substantive. This belief is supported by *Grosvenor v. Brienen, supra* at 948, where the court stated:

> "Rule 68 refers to the 'judgment' obtained by the plaintiff. There is no reason to understand the term 'judgment' to refer only to the jury's verdict on damages, rather than to both the verdict and the district court's determination of reasonable pre-offer fees under § 1988."

settlement offer, equals an amount greater than that offer. Thus, plaintiff argues, it would not have been more favorable to accept the offer in lieu of the result obtained.

The judgment in this case was $11,760.11. Counsel fees and costs, which accrued up to the date of the offer, are represented to be $8,981.13.[7] The sum of these two figures equals $20,741.24—$741.24 greater than the $20,000.00 settlement offer. However, before the court can summarily accept plaintiff's figures, it must review the reasonableness of plaintiff's request.

■ The party seeking attorney's fees has the burden to prove that its request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). To meet this burden, the fee applicant must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart, supra*, 461 U.S. at 433, 103 S.Ct. at 1939. In a case involving § 1988, the party opposing the fee award then has the burden to challenge, by affidavit or brief, with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir. 1989); *see also, Rode v. Dellarciprete, supra*. The district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Bell v. United Princeton*, 884 F.2d at 720; *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985). Finally, once the adverse party has raised objections, the district court has wide discretion in adjusting the fee award in light of those objections. *Bell v. United Princeton,*

*supra* at 721; *see also Rode v. Dellarciprete, supra* at 1183.

■ With regard to an attorney's reasonable hourly rate, the general rule is that counsel is entitled to be paid "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir.1983). Such a rate is to reflect an attorney's skill, reputation and experience. *Blum v. Stenson, supra.* "Ordinarily, the attorney's own billing rate for private clients will do so; however, in extreme cases, this rate may be reduced when it is so far above standard community rates for competent counsel that it would be unfair to impose this rate upon the defendant." *Fletcher v. O'Donnell, supra* at 426, *citing Student Pub. Interest Research Group v. AT & T*, 842 F.2d 1436, 1445 (3d Cir.1988). However, it is important to note, as did Judge Cahn in *Fletcher*, that "the Supreme Court, in setting out the principals undergirding the court's determination of a reasonable hourly rate, has stated that 'the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community....'" *Fletcher v. O'Donnell, supra* at 427, *citing Blum v. Stenson, supra*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11 (emphasis added).

The hourly rates proposed by plaintiff's counsel were as follows:

| | | |
|---|---|---|
| 1. | Bruce S. Schwartz, Esquire | $130.00/hr. |
| 2. | David Michelman, Esquire | $150.00 and $175.00/hr. |
| 3. | Joseph McGill, Esquire | $175.00/hr. out-of-court and $200.00/hr. in-court |
| 4. | Marlene Fleming, Esquire | $130.00/hr. |
| 5. | Student Assistants Andrea Gigante, Andrew Graham and James Stoltzfus | $60.00/hr. |

---

7. Plaintiff, in his brief in support of the motion to amend the fee petition, represents $7,836.50 to be "pre-offer" legal fees and $1,144.63 as "pre-offer" disbursements.

Each of the above listed attorneys has submitted his or her own sworn affidavit attesting to the reasonableness of these rates. Moreover, supporting third party affidavits from attorneys Alan Yatvin and David Rudovsky were filed attesting to the reasonableness of Michelman, McGill and Fleming's hourly rates. Alan Yatvin is an experienced attorney in civil rights matters, having practiced in this area for nine (9) years. In his affidavit, he states that the hourly rate of Mr. McGill is reasonable. He also states that Ms. Fleming's rate of $130.00 per hour is reasonable, however, he bases this on having known Ms. Fleming and her work for only three (3) months. Since the services performed by these attorneys occurred after the settlement offer, they are not in issue at this time.

The affidavit of David Rudovsky, Esquire, also states that Mr. McGill's hourly rate is reasonable. It appears from the face of the affidavit that Mr. Michelman's hourly rate is also included in Mr. McGill's figure, although Mr. Michelman has claimed a lesser hourly rate of $150.00 per hour for the period in question. No supporting affidavit or other direct evidence was filed with respect to Bruce S. Schwartz, Esquire. Furthermore, no affidavits whatsoever were filed with respect to the student assistants: Andrea Gigante, Andrew Graham, and James Stoltzfus. Defendant contests these representations as being repetitive, exorbitant and unreasonable based on the requirements of this rather straight forward case.

■ As noted above, the plaintiff has the burden "to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community...." *Blum v. Stenson, supra* at 895 n. 11, 104 S.Ct. at 1547 n. 11. The court finds that this burden has been met with respect to Mr. Michelman and Mr. McGill.[8] However, there is concern on the court's part that a fee of $150.00 per hour for Mr. Michelman is excessive for services which almost exclusively involve discussion with firm associates and review of their work. The Third Circuit in *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983),

stated that "routine tasks, if performed by senior partners in large law firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." On this basis, I will not allow Mr. Michelman's fee request to stand at that rate, especially since the work performed in the early part of this case was merely supervisory, reviewing work performed by others and making telephone calls. Those attorney services clearly appear to be overstaffing. For those services, the instruction of *Ursic v. Bethlehem Mines, supra,* is clearly applicable. At $100.00 per hour, Mr. Michelman's services *at that time* and for the type of services rendered is more than adequate. However, with respect to Attorneys Schwartz and Fleming, and the three (3) student assistants, I find that the burden of producing satisfactory evidence has not been met.

Mr. Schwartz's involvement in this case was primarily focused on its early stages up to and including the filing of the complaint. By his own affidavit, Mr. Schwartz "had no experience prior to this case in civil rights litigation." Additionally, no supporting evidence was presented attesting to the reasonableness of Mr. Schwartz's rate. Similarly, Ms. Fleming has failed to convince the court that the rate she requests is in line with those prevailing in the community for an associate with her lack of experience. In her affidavit Ms. Fleming states that her prior experience in civil rights litigation is limited to her former duties as Director of Personnel at Albert Einstein Medical Center. I believe this experience does not lend itself to expertise in the wholly different realm of police misconduct cases, § 1983 actions and negligence cases. As a result, this court must determine an appropriate hourly rate for Mr. Schwartz and Ms. Fleming's services.

An examination of recent fee awards to attorneys in this district is necessary in order to establish a reasonable hourly rate. For example, a fee awarded by Judge Huyett gave $80.00 per hour to a partner at a Lancaster firm. *Continental Assurance Co. v.*

---

8. With respect to Mr. McGill, the court is satisfied that his rates are in accord with those prevailing in the market. Mr. McGill displayed a considerable amount of competence and poise throughout the course of the litigation.

*Lombardo,* No. 86–4867, 1988 WL 94321 (E.D.Pa., Sept. 8, 1988). Similarly, a 1987 award by Judge Huyett gave $60.00 per hour to an associate in a Philadelphia labor law firm. *Metro Container Corp. v. Teamsters Local 676,* No. 86–6888, 1987 WL 15825 (E.D.Pa., Aug. 19, 1987). In contrast, an associate in a prominent Philadelphia firm was awarded $95.00 per hour by Judge Newcomer. *J.F. Daley Int'l Ltd. v. GRP Corp.,* No. 88–4688, 1989 WL 102930 (E.D.Pa., Sept. 6, 1989). Finally, in a case decided in this district by Judge DuBois, a first year associate with no prior civil rights litigation experience was awarded $80.00 per hour. *Younger v. City of Philadelphia,* No. 88–6133, 1990 WL 87378 (E.D.Pa., June 20, 1990).

■ The court has considered Mr. Schwartz's and Ms. Fleming's request for $130.00 per hour and concludes that $85.00 per hour is a reasonable rate for their services, since their services were rendered in 1990. In reaching this decision, it is important to note that I have considered not only the awards given to other attorneys in this district, but also the lack of experience and the contingent nature of counsel's work.

■ Lastly is the issue of the student assistant's hourly rate. As noted above, plaintiff's counsel requests $60.00 per hour for services performed by three (3) student assistants, Andrea Gigante, Andrew Graham and James Stoltzfus. Defendant challenges this rate as excessive and argues that plaintiff offered no supporting evidence of the reasonableness of these rates. The Supreme Court has held that student assistant hours

are to be treated and compensated as they are in the relevant market. When a student assistant's services would be billed to a paying client, payment for such services at prevailing market rates may be shifted under § 1988. *Missouri v. Jenkins,* 491 U.S. 274, 285–289, 109 S.Ct. 2463, 2470–2472, 105 L.Ed.2d 229 (1989). Furthermore, "once the adversary party raises objections to the fee request, the district court has a greater deal of discretion to adjust the fee award in light of those objections." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

I agree with the defendant that plaintiff has not met his burden of showing that the student assistant rates are in line with those prevailing in the market. A review of the time-record documents which detail the students' services reveals that the work performed included very general duties associated with the early stages of litigation. The nature of the services of each of these parties is not explained as to their qualifications. They are not alleged to be lawyers. At most, they merely appear to do some routine clerical duties in assisting lawyers to obtain information. Moreover, this work was performed by individuals who, by their nature, have little to no experience in civil rights cases such as this. Accordingly, I feel a reasonable hourly rate for the services performed by plaintiff's counsels' student assistants can be fixed at $35.00 per hour during that period.

Thus, a summary of counsel's hourly rates is:

| | |
|---|---|
| 1. David Michelman, Esquire | $100.00/hr. |
| 2. Joseph McGill, Esquire | $175.00 and $200.00/hr. |
| 3. Bruce S. Schwartz, Esquire | $85.00/hr. |
| 4. Marlene Fleming, Esquire | $85.00/hr. |
| 5. Student Assistants<br>Andrea Gigante,<br>Andrew Graham and<br>James Stoltzfus | $35.00/hr. |

---

*4. Hours*

■ The next inquiry which must be made in order to determine if plaintiff's coun-

sel fees exceed the $20,000.00 settlement offer is what reasonable hours were expended on the pre-offer litigation. The Supreme

Court in *Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. at 1939, suggested that hours may be charged to the defendant if they were "reasonably expended" on the litigation. The plaintiff must provide the court with adequate documentation for the hours requested. *Northeast Women's Center v. McMonagle,* 889 F.2d 466, 475 (3d Cir.1989). A court reviewing the hours may reduce them only if the defendant challenges them or if the hours expended are within his personal knowledge. *Bell v. United Princeton Properties,* 884 F.2d 713, 719 (3d Cir.1989); *see also Fletcher v. O'Donnell, supra* at 428.

■ In *Hensley,* the Supreme Court stated "the party seeking an award of fees should submit evidence supporting the hours worked, ... where documentation of hours is inadequate, the district court may reduce the award accordingly." 461 U.S. at 433, 103 S.Ct. at 1939. Many circuits require that the documentation be satisfied by the presentation of contemporaneous records. *See Grendel's Den v. Larkin,* 749 F.2d 945 (1st Cir.

1984); *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136 (2nd Cir. 1983); *Nat'l Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir. 1982). However, in this circuit, reconstructed time records have been held to be enough, provided that sufficient detail is present to allow defense counsel to attack specific items. *Fletcher v. O'Donnell, supra* at 429.

Plaintiff's original and amended fee petitions set out the dates in which work was performed in this case, the amount of time spent on a particular issue, a description of that issue, and the attorney or student assistant who performed the work. In the amended fee petition, plaintiff's counsel has also provided computer-generated contemporaneous billing records.[9] A review of these documents reveals that plaintiff claims a total of 59 hours of service performed up until the September 18, 1990, settlement offer date.[10] Only three (3) people are listed as performing these services: Bruce S. Schwartz, Esquire (41 hours);[11]

9. The billing records and their unique relationship to counsel's summary of hours of work performed will be discussed, *infra.*

10. Plaintiff's original fee petition represents 22.2 hours of work performed up until this date. In his amended petition, plaintiff claims an additional 36.8 hours of service to be charged up until September 18, 1990.

11. Plaintiff represents the number of hours spent performing work by using whole and decimal numbers. For example, one 1) hour is represented by the whole number one (1). One-half (½) hour is represented by .5/hr. Each decimal place is equal to six minutes. Bruce S. Schwartz represented his hours as follows:

*8/31/89*—BSS—Telephone conference with Acme Market security office re: access to employee witness—*0.3* hours.
*9/5/89*—BSS—Preparation of petition to preserve police recordings; arrange for PI Maniscola to interview witnesses; telephone call to W. Rubel, Acme counsel—*2.00* hrs.
*10/25/89*—BSS—Letter to Hahnemann University requesting hospital records; letter to Philadelphia Police following up on request for telephone/radio room tapes—*1.20* hrs.
*2/7/90*—BSS—Legal research on police misconduct as basis for tort or civil rights law suit—*1.40* hrs.

*2/8/90*—BSS—Legal research on police misconduct cases—*1.80* hrs.
*2/16/90*—BSS—Legal research on police misconduct cases—*.07* hrs.
*2/20/90–2/23/90*—BSS—Drafting letter to City of Philadelphia—*8.8* hrs.
*3/12/90*—BSS—Telephone call to Willard Strauss—*.30* hrs.
*3/14/90*—BSS—Review notice from City of Philadelphia Claims Department; assign AG to collect info re: Strauss injuries—*.70* hrs.
*3/16/90*—BSS—Letter to James Strauss' doctors—*.30* hrs.
*3/21/90*—BSS—Review of medical records received from Hahnemann Hospital; letter to City of Philadelphia—*.05* hrs.
*4/2/90*—BSS—Telephone calls to John Day, City of Philadelphia Law Department re: Strauss claim—*.50* hrs.
*4/27/90*—BSS—Conference with DFM re: city—*.20* hrs.
*5/2/90*—BSS—Telephone calls to Maria Lynch (City law department); dictate letter to Strauss re: "copying policy"; letter to Sloritsky; conference with DFM; telephone call—*1.50* hrs.
*5/8/90*—BSS—Edit letter to Willard/Jim Strauss—*.30* hrs.
*5/14/90*—BSS—Review of cost information received in letter from Willard Strauss—*.20* hrs.
*5/18/90*—BSS—Draft demand letter to City of Philadelphia (after review of file and expense summaries to date)—*2.90* hrs.

David F. Michelman, Esquire (15.1 hours);[12] and Andrea Gigante (2.9

5/22/90—BSS—Conference with DFM re: additional information needed to complete demand letter—.50 hrs.

5/23/90—BSS—Revise figures in demand letter; conference with PCD re: legal billing to date; telephone call to Willard Strauss re: Jim's lost wages and medical condition; memorandum to DFM; telephone call to Willard Strauss; telephone call to Doctor Rhodes' office—1.80 hrs.

5/24/90—BSS—Conference with DFM re: demand letter—.30 hrs.

6/1/90—BSS—Conference with DFM; assemble medical records to James and Willard Strauss—.20 hrs.

6/15/90—BSS—Telephone call to Maura Lynch; conference with DFM—.40 hrs.

6/18/90—BSS—Assign AG to compile J. Strauss legal bills for transmittal to Department of City Solicitor M. Lynch; cover letter to M. Lynch—.70 hrs.

6/29/90—BSS—Telephone call to Maura Lynch, City Solicitor's office; memorandum to DFM—.50 hrs.

7/9/90—BSS—Conference with DFM; review status of file re: negotiations with City—.30 hrs.

7/20/90—BSS—Telephone call to Maura Lynch, Phila. Law Department; memorandum re: same to DFM—.80 hrs.

7/23/90—BSS—Conference with DFM—.10 hrs.

7/26/90—BSS—Review cases on malicious—.40 hrs.

8/6/90—BSS—Legal research re: malicious prosecution/abuse of process where criminal prosecution terminated by dismissal of some courts and ARD on remaining—2.00 hrs.

8/7/90—BSS—Legal research re: malicious prosecution, abuse of process, etc.; conference with DFM—4.80 hrs.

8/10/90—BSS—Legal research at Rutgers University Law Library; draft letter to Maura Lynch, City of Philadelphia Law Department; prosecution; conference with DFM—2.90 hrs.

8/13/90—BSS—Conference with DFM—.40 hrs.

8/14/90—BSS—Review and revise DFM letter to Maura Lynch—1.00 hrs.

8/15/90—BSS—Conference with DFM—.30 hrs.

TOTAL BILLING HOURS—41.00

**12.** David Michelman's hours were represented as follows:

10/18/89—DFM—Discussion with firm legal assistant re: medical records—.10 hrs.

2/16/90—DFM—Review of notice statute—.20 hrs.

2/23/90—DFM—Reviewing demand letter to City and discussion of same with firm associate—2.40 hrs.

4/2/90—DFM—Discussion with firm associate—.10 hrs.

5/7/90—DFM—Discussions with firm associate re: response from City—.40 hrs.

5/7/90—DFM—Telephone call to T. Maniscola re: bills and discussion with firm associate re: same—.20 hrs.

5/19/90—DFM—Drafting demand letter to City—.50 hrs.

5/22/90—DFM—Drafting demand letter and discussion of same with firm associate—.80 hrs.

5/23/90—DFM—Discussion with firm associate and redrafting letter to City—.40 hrs.

5/24/90—DFM—Telephone calls to W. Strauss re: demand letter; discussion of same with firm associate and modification of letter—.50 hrs.

6/1/90—DFM—Discussion with firm associate re: medical bills—.10 hrs.

6/12/90—DFM—Telephone calls to J. and W. Strauss re: hospital bills—.20 hrs.

6/15/90—DFM—Discussion with firm associate re: City's position—.10 hrs.

6/22/90—DFM—Discussion with firm associate and review of letter to City—.20 hrs.

6/29/90—DFM—Discussion with firm associate re: negotiations with City—.20 hrs.

7/3/90—DFM—Telephone call to W. Strauss re: status—.10 hrs.

7/5/90—DFM—Telephone call to M. Lynch re: settlement offer—.40 hrs.

7/16/90—DFM—Telephone call to M. Lynch—.10 hrs.

7/17/90—DFM—Telephone call to M. Lynch—.10 hrs.

7/18/90—DFM—Telephone call to M. Lynch—.20 hrs.

7/19/90—DFM—Telephone call to M. Lynch—.20 hrs.

7/20/90—DFM—Telephone calls to M. Lynch re: settlement—.20 hrs.

7/23/90—DFM—Review of letter from Welfare and memorandum from firm associate; telephone call to W. Strauss re: City's offer—.20 hrs.

7/24/90—DFM—Legal research re: 1983 and negligence claim—.30 hrs.

7/26/90—DFM—Discussion with firm associate re: malicious prosecution—.20 hrs.

8/6/90—DFM—Discussion with firm associate re: legal research—.20 hrs.

8/7/90—DFM—Discussion with firm legal assistant re: legal theories for malicious prosecution, false arrest and abuse of process and available damages—1.00 hrs.

8/9/90—DFM—Review of legal research re: false arrest; drafting letter to M. Lynch—2.40 hrs.

8/13/90—DFM—Discussion with firm associate re: negotiating strategy; re-drafting letter to M. Lynch—.60 hrs.

8/14/90—DFM—Redrafting letter to City—.20 hrs.

8/16/90—DFM—Telephone calls to M. Lynch re: settlement—.30 hrs.

8/21/90—DFM—Telephone call to M. Lynch—.10 hrs.

8/24/90—DFM—Telephone call to M. Lynch—.10 hrs.

hours).[13]

■ The defendant, in both his original answer and his response to plaintiff's motion to amend the fee petition, contests plaintiff's counsel's expenditure of time as unreasonable. Specifically, defendant contends that plaintiff spent an inordinate amount of time on researching police misconduct issues, despite plaintiff's asserted claim of vast expertise in this area. Additionally, defendant challenges various telephone entries billed by plaintiff, and states that many of the services billed amount to overstaffing and should have been performed by a single attorney or by a student or secretary.[14]

*9/4/90—DFM—Telephone call to M. Lynch—.10 hrs.*
*9/5/90—DFM—Telephone call to M. Lynch—.10 hrs.*
*9/6/90—DFM—Telephone call to M. Lynch—.10 hrs.*
*9/12/90—DFM—Telephone call to M. Lynch—.20 hrs.*
*9/13/90—DFM—Telephone call to M. Lynch—.10 hrs.*
*9/14/90—DFM—Telephone call to M. Lynch—.10 hrs.*
*9/17/90—DFM—Telephone call to M. Lynch—.10 hrs.*
*9/18/90—DFM—Telephone calls to M. Lynch and W. Strauss re: City's counter-offer; drafting letter to City re: new proposal—1.00 hrs.*
*TOTAL BILLING HOURS—15.1*

13. Student Assistant Andrea Gigante represents her hours as follows:

*10/16/89—AG—Find out procedure for obtaining hospital and medical records—.40 hrs.*
*3/21/90—AG—Draft letters to doctors re: report—.80 hrs.*
*3/29/90—AG—Letter to Dr. Rhodes—.30 hrs.*
*4/4/90—AG—Follow-up on medical information request—.30 hrs.*
*4/5/90—AG—Attempt to obtain additional medical records—.60 hrs.*
*6/18/90—AG—Prepare bills to be sent to City Solicitor—.50 hrs.*
*TOTAL BILLING HOURS—2.9*

14. Defense counsel challenges the expenditure of time with respect to pre-offer services in detail as follows:

| DATE | ACTIVITY | LAWYER | TIME |
|---|---|---|---|
| 2/7/90 | Research on police misconduct | BSS | 1.40 |
| 2/8/90 | Research on police misconduct | BSS | 1.80 |
| 2/16/90 | Research on police misconduct, statute of limitations-notice requirements. | BSS | .70 |
| | Review of notice statute | DFM | unknown |
| 8/31/89 | Access to employees | BSS | .30 |
| 3/12/90 | Call to W. Strauss in reference to medical complications (BSS is not a M.D.; Medical reports would indicate plaintiff's present and future physical status). | BSS | .30 |
| 2/20/90 | Drafting letter to City | BSS | 1.00 |
| 2/21/90 | Drafting letter to City | BSS | 4.30 |
| 2/20/90 | Drafting letter to City | BSS | 2.50 |
| 2/23/90 | Revising letter to City | BSS | 1.00 |
| 2/23/90 | Reviewing demand letter to City (It is assumed, giving the proximity of the above entries, that the letter at issue is a demand letter. Expending 11.2 hours in composing a demand letter is simply excessive and unreasonable given the lack of complexity in the matter at hand and the collective experience of both attorneys.) | DFM | 2.40 |
| 3/14/90 | Assign AE to collect information re: description of fracture (It is unknown what is represented by this entry.) | BSS | unknown |
| 3/21/90 | Draft letters to doctors re: reports (This seemingly was done on 3/16/90 by BSS. Another letter is clearly redundant.) | AG | .80 |
| 3/29/90 | Letter to Dr. Rhodes (Redundant as represented on 3/21/90.) | AG | .30 |
| 8/9/90 | Drafting letter to Judge Cahn (In reference to what and how much time expended?) | DFM | unknown |

| DATE | ACTIVITY | LAWYER | TIME |
|------|----------|--------|------|
| 8/12/91 | Drafting letter to Judge Cahn (This was done on 8/9/90 and still does not denote time expended.) | DFM | unknown |
| 8/13/91 | Damages-calculate lost wages (Clearly excessive given plaintiff's prior work history.) | AG | 4.40 |
| 8/13/91 | Drafting letter to Judge Cahn (Excessive.) | DFM | unknown |
| 4/27/90 | Conference with DFM (Conference for what purpose?) | BSS | .20 |
| 5/2/90 | "Copying policy". (What does this policy have to do with the present action?) Letter to Sloritsky. (Who is Sloritsky?) Conference with DFM. (For what purpose?) Telephone call. (This entry is not understood.) | BSS | unknown |
| 5/8/90 | Edit letter (For what purpose?) | BSS | .30 |
| 5/14/90 | Review of cost information (What is purpose and relevance?) | BSS | .20 |
| 5/22/90 | Conference with DFM in reference to additional information needed for demand letter. (BSS already accumulated a generous 2.90 hours in drafting a demand letter on 5/18/90.) | BSS | .50 |
| 5/23/90 | Revise figures in demand letter. (Sufficient time was taken on 5/18 and 5/22. This additional time is simply excessive and unreasonable given the lack of complexity in the case at hand.) Conference with P.C.D. re: legal bills. (Who or what is P.C.D. and what is purpose of reviewing billing date?) Memo to D.F.M. (For what purpose?) Telephone call to Willard Strauss. (Already called prior in the day. Also no reason given for purpose of call.) | BSS | unknown |
| 5/24/90 | Conference with DFM re: demand letter. (This is clearly excessive for the reasons stated in the 5/23/90 entry.) | BSS | unknown |
| 6/1/90 | Conference with DFM. (For what purpose?) Assemble medical records. (For what purpose?) | BSS | .20 |
| 6/15/90 | Telephone call to Maura Lynch; Conference with DFM. (In reference to what?) | BSS | .40 |
| 6/18/90 | Assign AG to compile legal bills (This is not anything more than a secretarial cost and is non-compensable. Jordan v. Allain, 619 F.Supp. 98, 115–116 (D.C.Miss.1985). Cover letter to Maura Lynch. (Given the lack of factual or legal complexity this expense is entirely unreasonable and would have been better served by a simple phone call. | BSS | .70 |
| 6/29/90 | Phone call to M. Lynch. (For what purpose?) Memorandum to DFM. (No need for a memo to DFM and BSS worked in the same office.) | BSS | .50 |
| 7/20/90 | Phone call to M. Lynch. (For what purpose?) Memo of same to DFM. (No need for a memo.) | BSS | .80 |
| 7/23/90 | Conference with DFM. (Conference about what?) | BSS | .10 |
| 7/26/90 | Review cases on malicious (This averment was withdrawn by way of stipulation at trial; thus, is non-compensable.) | BSS | .40 |

| DATE | ACTIVITY | LAWYER | TIME |
|---|---|---|---|
| 8/6/90 | Legal research re: malicious abuse of process. (These averments were withdrawn by stipulation prior to trial. Furthermore, time spent by attorneys reading background cases and materials designed to familiarize themselves with an area of law are non-compensable. Ramos v. Lamm, 713 F.2d 546, 553–554 (10 Cir.1983).) | BSS | 2.00 |
| 8/7/90 | Legal research. (See prior response to entry of 8/6/90.) Conference with DFM. (For what purpose?) | BSS | 4.80 |
| 8/10/90 | Legal research. (See prior response of 8/6/90.) Draft letter to M. Lynch. (For what purpose?) Conference with DFM. (About what?) | BSS | 2.90 |
| 8/13/90 | Conference with DFM. (About what?) | BSS | .40 |
| 8/14/90 | Review DFM letter to M. Lynch. For what purpose was this letter? Also a letter was already drafted on 8/10.) | BSS | 1.00 |
| 8/15/90 | Conference with DFM. (About what?) | BSS | .30 |
| 4/2/90 | Discussion with associate. (Which associate and for what purpose?) | DFM | .10 |
| 5/7/90 | Discussion with associate. (Which associate and for what purpose?) | DFM | .40 |
| 5/19/90 | Draft demand letter. (This draft was done by BSS on 5/18/90.) | DFM | .50 |
| 5/22/90 | Draft demand letter. (Letter previously drafted 5/18 and 5/19/90.) | DFM | .80 |
| 5/23/90 | Draft demand letter. (Letter previously drafted 5/18, 5/19 and 5/22.) | DFM | .40 |
| 6/12/90 | Telephone calls to J. and W. Strauss re: hospital bills. (J. Strauss' lost wages and medical condition were previously discussed on 5/23 by BSS>) | DFM | .20 |
| 6/22/90 | Discussion with firm associate. (For what purpose. Furthermore it is obvious by the time expended that M. Lynch was not present for a phone conversation.) | DFM | .10 |
| 7/17/90 | See prior response to 7/16/90 entry. | DFM | .10 |
| 7/18/90 | See prior response to 7/16 and 7/17/90 entries. | DFM | .20 |
| 7/19/90 | See prior response to 7/16, 7/17 and 7/18/90 entries. | | |
| 7/20/90 | Telephone calls to M. Lynch. (This done on 7/5/90.) | DFM | .20 |
| 7/23/90 | Review of letter from Welfare and memo from associate. (Neither of these entries have anything to do whatsoever with subsequent litigation.) | DFM | unknown |
| 7/24/90 | Legal research. (Time spent by attorneys to familiarize themselves with an area of law are non-compensable. Ramos v. Lamm, 713 F.2d 546, 553–554 (1983). | DFM | .30 |
| 7/26/90 | Legal research re: malicious prosecution. (This averment was withdrawn prior to trial by stipulation. Furthermore, time spent by attorneys to familiarize themselves with an area of law are non-compensable. Id.) | DFM | .20 |
| 8/6/90 | Legal research. (See prior response to entry at 7/24/90.) | DFM | .20 |
| 8/7/90 | Legal research. (See prior response to entry at 7/26/90.) | DFM | 1.00 |

A review of plaintiff's fee petition reveals that many of the hours charged to this case were indeed excessive or redundant. To begin, plaintiff puts forth a bill requesting a total of 15.1 hours expended prior to September 18, 1990, for legal research. Attorney Bruce Schwartz utilized much of this time to perform research related to "malicious prosecution and abuse of process." However, plaintiff's counsel decided not to

| DATE | ACTIVITY | LAWYER | TIME |
|---|---|---|---|
| 8/9/90 | Legal research re: false arrest. (See prior response to entry at 7/26/90.) | DFM | unknown |
| 8/13/90 | Re-drafting letter to M. Lynch (Why re-draft letter?) | DFM | unknown |
| 8/14/90 | Re-drafting letter. (This was done on 8/13/90.) | DFM | .20 |
| 8/16/90 | Telephone calls to M. Lynch re: settlement. (This was previously done by phone or letter on 5/19, 5/22, 7/5, 7/16, 7/17, 7/18, 7/19, 7/20, 8/9, 8/13 and 8/14/90.) | DFM | .30 |
| 8/21/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 8/24/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 9/4/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 9/5/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 9/6/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 9/12/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .20 |
| 9/13/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 9/14/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 9/17/90 | Telephone call to M. Lynch. (Obviously not there. Furthermore, what was purpose of call?) | DFM | .10 |
| 9/21/90 | Drafting letter to M. Lynch. (Draft done on 9/18 and 9/19/90.) | DFM | unknown |
| 10/1/90 | Legal research re: delay damages. (Delay damages were never requested at any time during the proceedings or for that matter awarded.) | DFM | .10 |
| 11/13/90 | Telephone call to M. Lynch. (M. Lynch was obviously not in her office. Furthermore, what was this call in reference to?) | DFM | .10 |
| 11/14/90 | Telephone call to M. Lynch. (M. Lynch was obviously not in her office. Furthermore, what was this call in reference to?) | DFM | .10 |
| 11/16/90 | Telephone call to M. Lynch. (M. Lynch was obviously not in her office. Furthermore, what was this call in reference to?) | DFM | .20 |
| 11/19/90 | Telephone call to M. Lynch. (M. Lynch was obviously not in her office. Furthermore, what was this call in reference to?) | DFM | .30 |

include these issues as claims against the defendants in the final draft of the complaint. Thus, plaintiff's counsel seeks to recover fees for services he later found to be unnecessary when preparing the ultimate complaint. The court finds this practice unreasonable. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode v. Dellarciprete, supra* at 1183. Accordingly, I will subtract 9.7 hours directly relating to this type of research.

Additionally, Attorney Michelman has requested 4.1 hours for review of legal research performed by a firm associate. The Third Circuit has stated that:

"A fee applicant cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law. Double dipping, in any form, cannot be condoned. Our cases supply no authority for non-stop meter running in law offices."

*Ursic v. Bethlehem Mines, supra* at 677.

In Mr. Michelman's case, a fee of $150.00 an hour, when coupled with an excessive amount of time spent reviewing research and discussing the same with firm associates, is exactly the type of double dipping frowned upon by courts in this circuit. Thus, I will reduce Mr. Michelman's hours related to research by 2 hours. Adding this sum to the 9.7 hours excludable as mentioned above, and subtracting that from the 15.1 total, leaves plaintiff with a final total of 3.4 hours allotted for time reviewing issues related to police misconduct and § 1983 actions.

■ Plaintiff has also charged an amount of hours unrelated to research activity which the court believes is unnecessary and/or redundant. Primary among these are 11.2 hours requested for work done by both Mr. Schwartz and Mr. Michelman in drafting and reviewing a single demand letter to the City of Philadelphia.[15] Clearly, this amount of time dedicated to the writing of a single letter is excessive, and I will reduce the number of hours allotted for this task by Mr. Schwartz by 6.3 hours, and for Mr. Michelman by 2 hours. Thus, 8.3 hours will be subtracted from plaintiff's overall request.

■ Lastly, plaintiff has requested reimbursement for a number of telephone calls made before the September 18, 1990 settlement offer date which the court believes are unnecessarily billed. These calls were made by Mr. Michelman to M. Lynch—presumably, at the City Solicitor's Office, and involve an amount of billing time equaling 3.5 hours.[16] A review of the tabulation of these

---

15. As is set forth *infra,* plaintiff documents this activity as:

| Date | Attorney | Activity | Hours |
|------|----------|----------|-------|
| 2/20/90 | BSS | Drafting letter to City of Philadelphia. | 1.00 |
| 2/21/90 | BSS | Drafting letter to City of Philadelphia. | 4.30 |
| 2/22/90 | BSS | Drafting letter to City of Philadelphia. | 2.50 |
| 2/23/90 | BSS | Revising letter to City of Philadelphia. | 1.00 |
| | DFM | Reviewing demand letter to City and discussion of same with firm associate. | 2.40 |
| | | TOTAL—11.2 hours | |

16. These calls were detailed by plaintiff as follows:

| Date | Attorney | Activity | Hours |
|------|----------|----------|-------|
| 7/5/90 | DFM | Telephone call to M. Lynch re: settlement offer. | 0.40 |
| 7/16/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 7/17/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 7/18/90 | DFM | Telephone call to M. Lynch. | 0.20 |
| 7/19/90 | DFM | Telephone call to M. Lynch. | 0.20 |
| 7/20/90 | DFM | Telephone calls to M. Lynch re: settlement offer. | 0.20 |
| 8/16/90 | DFM | Telephone calls to M. Lynch re: settlement offer. | 0.30 |
| 8/21/90 | DFM | Telephone call to M. Lynch. | 0.10 |

calls leads me to conclude that Mr. Michelman was unable to converse with Ms. Lynch on many occasions. Nonetheless, he billed his client for placing the calls. Placing telephone calls does not require the services of an attorney charging $150.00 per hour when that service could be easily done by a secretary. I find this practice to be wholly unnecessary and irresponsible and will reduce Mr. Michelman's billing time by 3 hours, allowing him .5 hours for this activity.

The court accepts the remainder of plaintiff's hours as reasonable.

### 5. Summary

Plaintiff has requested to be reimbursed for a total of 59 hours for services performed up until the settlement offer date of September 18, 1990. The court will reduce that amount, pursuant to the above analysis, by 23 hours for a total of 36 hours.[17]

I also find that plaintiff's counsel's reasonable rate for their services is as follows:[18]

| | | |
|---|---|---|
| 1. | Bruce S. Schwartz, Esquire | $85.00/hr. |
| 2. | David Michelman, Esquire | $100.00/hr. |
| 3. | Marlene Fleming, Esquire | $85.00/hr. |
| 4. | Joseph McGill, Esquire | $175.00 and $200.00/hr. |
| 5. | Student Assistants | $35.00/hr. |

### 6. Lodestar

The Third Circuit in *Lindy Brothers Builders, Inc. v. American Radiator*, 487 F.2d 161, 168 (3d Cir.1973), developed a formula for calculating reasonable counsel fees in cases where recovery is deemed appropriate. This fee award, called the "Lodestar", is computed by multiplying the hourly rate by the number of hours worked. This formula was subsequently adopted by the Supreme Court in *Hensley v. Eckerhart, supra.*

Accordingly, I find plaintiff's counsel's reasonable fee up until September 18, 1990 to be

$3,035.92. This figure is computed as follows:

Bruce S. Schwartz—$85/hr. × 25 hrs. = $2,125.00

David F. Michelman—$100/hr. × 8.1 hrs. = $809.60

Student Assistant Andrea Gigante—$35/hr. × 2.9 hrs. = $101.32

Total Hours = 36

Total Fee = $3,035.92

### 7. Plaintiff's Reasonable Attorney's Fees Plus Expenses and the Judgment

Having calculated plaintiff's reasonable attorney's fees up to the settlement

| Date | Attorney | Activity | Hours |
|---|---|---|---|
| 8/24/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 9/4/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 9/5/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 9/6/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 9/12/90 | DFM | Telephone call to M. Lynch. | 0.20 |
| 9/13/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 9/14/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 9/17/90 | DFM | Telephone call to M. Lynch. | 0.10 |
| 9/18/90 | DFM | Telephone calls to M. Lynch and W. Strauss re: City's counter-offer; drafting letter to City re: new proposal. | 1.00 |

TOTAL HOURS—3.5

17. Of these 23 hours, 16 will be subtracted from Bruce S. Schwartz's former total (41 hours) for an adjustment to 25 hours; and 7 hours will be subtracted from David F. Michelman's former total (15.1 hours) for an adjustment to 8.1 hours. Counsel's student assistant, Andrea Gigante, billed 2.9 hours before 9/18/90. As noted above, the court accepts this claim.

18. As I noted *supra*, Attorneys N. Marlene Fleming and Joseph McGill did not perform any services until after the September 18, 1990 offer date.

offer date of September 18, 1990, it is now appropriate to return to the inquiry of whether those fees, when added to plaintiff's expenses and the verdict, exceed the defendant's $20,000 offer. As was stated, *supra*, plaintiff's judgment was $11,760.11. His attorney fees total $3,035.92, and disbursements, as represented by the plaintiff, are $1,144.63. The sum of these figures equals $15,939.74—$4,060.26 less than defendant's settlement offer.[19] Thus, I find that plaintiff is entitled to fees and expenses accruing up to the September 18, 1990 offer date. I further find that these fees ($3,035.92) and expenses ($1,144.63) equal $4,180.55. An appropriate order will follow.

---

**19.** Since this figure is less than defendant's settlement offer, it is unnecessary to consider plaintiff's fees and expenses after the September 18, 1990 date. *See Marek v. Chesny, supra.*